J-S06001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| T.F. | |
| | No. 1409 MDA 2015 |

Appeal from the Order Entered July 17, 2015
in the Court of Common Pleas of Lycoming County
Civil Division, at No(s): FC-2006-021398-CU

BEFORE: PANELLA, J., MUNDY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 08, 2016**

M.C. ("Mother") appeals from the custody order entered July 17, 2015, in the Court of Common Pleas of Lycoming County, which granted T.F. ("Father") primary physical custody, Mother partial physical custody, and both parties shared legal custody, with respect to their twin sons, C.F.1 and C.F.2 (the "Children"), who were born in October of 2002. We affirm.

The trial court summarized the relevant facts and procedural history as follows. The Children were in Mother's primary custody for kindergarten when they attended school in the Williamsport Area School District. Mother then moved to the Loyalsock School District, and the Children started the first grade. Mother went to jail while the Children were in the first grade and the Children were placed in the primary custody of Father.

_____
[*] Former Justice specially assigned to the Superior Court.

While residing with Father, the Children finished the first grade at Sugar Valley Charter School. Based on Father's opinion that they were not ready for the second grade, the Children repeated the first grade at Dickey Elementary in the Lock Haven after an additional move from Loganton to Lock Haven. The children attended the second grade and the third grade at Dickey Elementary. Prior to the start of the fourth grade, Father moved out of the home that he shared with his girlfriend in Lock Haven and returned to Loganton. The Children attended Sugar Valley Charter School for the start of the fourth grade.

In December 2013, Mother received a call from Father while she was in the hospital having just given birth to the Children's half-sister. Father needed Mother to pick up the Children since he was going to a 30-day rehabilitation program. The Children finished the fourth grade at Rommelt Elementary while living with Mother. In February 2014, Mother filed a Petition to Modify Custody, but did not have a way to contact Father for service. The Children had no contact with Father until March 2014, when he called. Mother did not get an address for Father until April 2014.

In May 2014, a modification hearing was held. Father consented to every other weekend visitation of the Children. In September 2014, Father informed Mother that he had moved out of his girlfriend's home again. Mother testified that, from September 2014 until December 2014, Father had only seen the Children for one weekend. In December of 2014, Father

moved back in with his girlfriend and resumed the every other weekend visitation with the Children.

In February 2015, Father filed a Petition for Emergency Custody Relief, alleging that Mother had not addressed the Children's health care issues, and that the Children were doing poorly in school.

The trial court held a custody trial. On July 17, 2015, the trial court issued an order granting Father primary physical custody of the Children and Mother partial physical custody. Father and Mother were also granted week to week physical custody during the summer.

This timely appeal followed.

The scope and standard of review in custody matters is as follows.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> Moreover,

> [o]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

- 3 -

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> The test is whether the evidence of record supports the trial court's conclusions.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (citations omitted).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

Relevant to this custody case are the numerous factors set forth in section 5328(a) of the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340. "All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted). Further,

> [s]ection 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal.
>
> In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's

explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

***A.V.***, 87 A.3d at 822-823 (some citations and internal quotation marks omitted).

Here, the trial court considered the factors set forth in section 5328(a) of the Child Custody Act to determine the best interest of the Children. When considering the factors as a whole, the court determined that it was in Children's best interest for Father to assume primary physical custody and Mother to assume partial physical custody.

In applying the section 5328(a) factors, the trial court found in this case the following, which we *paraphrase* below.

> 1. Which party is more likely to encourage and permit frequent and continuing contact between Child and the other party. The trial court found that both parties encourage such contact.
>
> 2. Abuse committed by a party or a member of a party's household. The trial court found no evidence of abuse by either party.
>
> 3. The parental duties performed by each party on behalf of Child. The trial court found that both Father and Mother have had primary custody of the Children and that both have performed the duties when they have had them. When one parent has the Children in their primary care, the other parent defers those responsibilities to the parent who has custody. Both parents are capable of performing all of the necessary parental duties on Children's behalf.
>
> 4. The need for stability and continuity in Child's education, family life, and community life. The trial court has significant concerns about both Father's and Mother's household instability. The Children have moved from school to school. Mother has no contact with the teachers while the Children are in Father's care. Likewise, Father has no contact with the teachers when the

Children are in Mother's care. Father has had significant instability in his relationship with his girlfriend and the couple have separated on and off many times. In addition, Father entered rehabilitation and Mother had to take over care of the Children. Mother also has had instability with her boyfriend. In addition, Mother quit the full-time job that she had when she was on the verge of getting benefits to start working for her boyfriend. The trial court has concerns about both of the parents having stability in their lives because they have not given the Children any stability in their lives at least from kindergarten on to the present.

5. <u>The availability of extended family</u>. Both Father and Mother have extended family that are a part of the Children's lives.

6. <u>The Child's sibling relationships</u>. In Father's home, Father's girlfriend has a son who is close in age to the Children. In Mother's home, the Children have a half-sister who is 19 months old. In addition, Mother's boyfriend has a son who no longer lives with them.

7. <u>The well-reasoned preference of Child based on Child's maturity and judgment</u>. Neither child gave the trial court a preference. They are the most tight-lipped Children that the court has ever had in front of it. The Children would not answer the court's questions, but the Children were not disrespectful. The Children have been put in a very tough position and do not want to choose. The Children will be okay with whatever the trial court does.

8. <u>The attempts of a parent to turn the Children against the other parent, except in cases of domestic violence where the reasonable safety measures are necessary to protect the Child from harm</u>. Neither parent has attempted to turn the Children against the other parent. The trial court found that the parents have a level of respect for each other that stops them from doing such things.

9. <u>Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the Children adequate for the Children's emotional needs.</u> The trial court found that both Father and Mother are clearly capable of doing this. They both have maintained a loving, stable, consistent, and nurturing relationship with the Children.

10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. The trial court found that both Mother and Father are capable of attending to all of the Children's daily physical, emotional, developmental, educational, and special needs.

11. The proximity of the residences of the parties. The parties live approximately thirty-five minutes apart.

12. Each party's availability to care for Child or ability to make appropriate child care arrangements. The trial court determined that Father and Mother are available to care for Children. In addition, both Father and Mother have the ability to make arrangements for the care of the Children.

13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. Father and Mother are civil to one another. However, the trial court found that Father and Mother lack communication skills with each other. Father and Mother need to be able to figure out how to communicate with each other. In addition, the parent who does not have custody needs to step up and learn how to assertive when the Children are not in their primary care.

14. The history of drug or alcohol abuse of a party or a member of a party's household. Mother clearly had a prior drug addiction, which ultimately led to criminal charges. Mother has successfully completed drug court, which is not an easy task. Mother is on probation, and is continuing to be drug tested. The trial court is satisfied that Mother is doing well in her sobriety, working the programs that she needs to work to deal with that struggle. In addition, Mother's boyfriend also has drug addiction issues. The trial court noted that, although Mother's boyfriend is not currently a member of the household, he might be in a few months. Father also has become addicted to pain medication after injuries, and has gone through treatment. Father is working on a program and appears to be doing well in his sobriety. Father had prior DUIs. All of those were quite a while ago. Now it seems that Father's biggest issue is drug addiction. As to Father's girlfriend, the trial court has no concerns.

15. The mental and physical condition of a party or member of a party's household. The trial court found that both Mother and Father are physically and mentally healthy.

16. Any other relevant factor. The trial court did not find that either household is superior to the other. The court has stability concerns with both households and is unable to predict where the lives of either Father or Mother will be in a year. The court cannot predict who Father and Mother will be involved with; what home each one may be living in; and what job each one may have. The trial court finds that the Children are struggling and are not thriving under the current circumstances. The trial court attributes the problem to the unstable chaotic life that both parents have given the Children from kindergarten to the present time. Thus, the trial court has decided to grant primary physical custody of Children to Father and to place the Children in his primary physical care commencing with the new school year, keeping the week-to-week exchange until that time.

*See* N.T., Custody Trial, 7/14/15, at 2-9. *See also* Trial Court Opinion, 9/15/15.

After consideration of all of the relevant factors, the trial court concluded that it was in the Children's best interest for Father to be given primary physical custody and Mother to be given partial physical custody. Both Father and Mother share primary physical custody of the Children during the summer on a week-to-week basis.

After a review of the record and the evidence presented, we find that there is competent evidence in the record that supports the trial court's findings with regard to the section 5328(a) factors. Thus, since the trial court's conclusions are not unreasonable, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2016