J-S58044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| K.J.W. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.H.W. | : | |
| | : | |
| | : | No. 967 WDA 2019 |

Appeal from the Order Entered May 28, 2019
In the Court of Common Pleas of Blair County Civil Division at No(s):
2009 GN 4830

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 19, 2019**

Appellant, K.J.W. ("Mother"), appeals from the May 28, 2019 Order that, *inter alia*, transferred primary physical custody of ten-year-old C.W. ("Child") from Mother to B.H.W. ("Father").  Upon careful review, we affirm.

The parties are familiar with the factual and procedural history in this case and we need not restate them in detail here.  Briefly, Father and Mother, who are the parents of Child, were married in 2008 and divorced in 2010.  Mother is also the parent of fourteen-year-old J.W., her older son from a previous marriage.

Father has worked as a purchasing agent for Sheetz, a convenience store, for approximately seventeen years and owns his own home where only he and Child reside.  Mother works as a respiratory therapist at two different hospitals and owns her own home, where she resides with Child and J.W.  Parents live approximately one mile away from each other

At the time of their divorce, the parties agreed to a custody Order that awarded Mother primary physical custody of Child and Father substantial periods of physical custody, including three evenings per week and overnight every other weekend. In February 2014, Father filed a Petition to Modify Custody and in July 2014, after an evidentiary hearing, the court awarded Mother primary physical custody of Child and awarded Father the same substantial periods of physical custody with the addition of one weekday overnight visit every other week.

On October 25, 2017, Father filed a Petition for Modification of the Custody Order, requesting primary physical custody of Child. On December 22, 2017, Mother married R.C., who resides in Nevada. This was Mother's fourth marriage. On January 16, 2018, Mother filed a Notice of Proposed Relocation and a Petition to Confirm Relocation, proposing to relocate Child to Nevada; Father opposed the Notice and Petition. On July 18, 2018 and July 19, 2018, the trial court began to hear evidence on Father's Petition to Modify and Mother's Notice and Petition to Relocate.

In October 2018, Mother withdrew her Notice and Petition to Relocate after R.C. filed for divorce. On October 29, 2018 and March 29, 2019, the trial court continued to hear evidence on Father's Petition to Modify.[1]

_____

[1] At these hearings, the trial court also heard evidence regarding a Petition for Modification of Custody filed by J.W.'s father, M.W.

The trial court heard testimony from Father, Mother, Child, and Arnold Shienvold, Ph.D, who conducted a custody evaluation and testified as an expert in psychology, forensic psychology, and custody evaluations in high conflict cases.[2]

On May 28, 2019, the trial court issued an Order granting Father's Petition to Modify and awarding Father primary physical custody of Child. The Order awarded Mother substantial periods of physical custody, including every other weekend from Thursday evening until Monday morning, overnight on every other Monday, and every other week during the summer months.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

I. Did the trial court err and/or abuse its discretion by transferring primary residential custody of [Child] from []Mother to []Father under all the facts and circumstances of this case and the law applicable thereto?

II. Did the trial court err and/or abuse its discretion in its consideration and application of the custody factors based on the facts and circumstances of this case?

III. Did the trial court err and/or abuse its discretion in finding that []Mother's proposed relocation with her children to Nevada to reside with her husband constituted an alienation of [Child] from the []Father and demonstrated Mother's lack of understanding of the importance of stability in [Childs]'s life?

Mother's Br. at 8.

_____

[2] The trial court also heard evidence presented by J.W.'s father, M.W.

The Child Custody Act, 23 Pa.C.S. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011. *E.D. v. M.P.,* 33 A.3d 73, 77 (Pa. Super. 2011). The Custody Act requires a trial court to consider all of the Section 5328(a) best interests factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a). A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." *S.W.D. v. S.A.R.*, 96 A.3d 396, 401 (Pa. Super. 2014). *See also* 23 Pa.C.S. § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

When reviewing child custody matters and the trial court's consideration of the Section 5328(a) factors, our paramount concern is the best interests of the child. *See Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006). "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Id.* (quotation and citation omitted).

This Court reviews a custody determination for an abuse of discretion. *In re K.D.,* 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *Id.* (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or

misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." **Id.**

Further, when this Court reviews a trial court's "best interests" analysis in custody matters, our scope of review is broad, but we are "bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." **Saintz, supra** at 512 (quotation and citation omitted). Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." **K.T. v. L.S.**, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can only interfere where the "custody order is manifestly unreasonable as shown by the evidence of record." **Saintz, supra** at 512 (citation omitted).

In her first issue, Mother avers that the trial court abused its discretion when it determined that it was in Child's best interest to transfer primary physical custody of Child from Mother to Father. Mother's Br. at 17. Mother argues that the evidence presented during the hearing failed to support a change in primary physical custody because the evidence demonstrated that Child expressed a preference for the custody arrangement to remain the same, has a strong bond with his half-brother, J.W., and was doing well under the existing custody arrangement. **Id.** at 18-21. Mother also contends that

the trial court relied too heavily on Dr. Shienhold's report and recommendations, which, Mother argues, contained errors regarding her employment history. *Id.* at 22. These claims lack merit.

Our review of the record reveals that the trial court did consider Child's relationship with J.W. and his preference for the custody arrangement to remain the same. The trial court made the following findings, which the record supports:

> Child's only sibling is his half-brother, [J.W.]. It appears their relationship has, at times, been difficult for [Child] and has even posed danger to him. During his interview, [Child] testified to be enjoying his relationship with [J.W.]. . . [Child] expressed satisfaction with the current arrangement, which places him with Mother more, but still with Father frequently.

Opinion and Order, dated 5/28/19, at 10 (internal citations omitted). Nevertheless, the trial court placed greater weight on which parent could provide stability for Child. The trial court concluded that "Mother's decision to uproot [Child], take him across the Country and remove him from all of the foundations of lifetime stability that he had developed in Blair County, demonstrates Mother's lack of understanding of the importance of this factor [and] place[s] her own interests above those of her child(ren)." *Id.* at 14. The trial court found that Mother's decision to marry a man who lived across the country that she had only known for a brief time "created worry, insecurity, and most of all, uncertainty with her sons." *Id.* The trial court opined:

- 6 -

> There is no doubt both [p]arents love [Child] and have proven they can provide him with his economic and social needs. The deciding factor here is that the [c]ourt considered Dr. Shienvold's Report and [R]ecommendations, and more importantly, the factual basis upon which he relied in creating said Report.
>
> The [c]ourt found Father more credible than Mother. Dr. Shienvold's report was a comprehensive evaluation and encompassed all aspects of this very difficult [c]ustody situation.
>
> Dr. Shienvold directly stated he found Mother deceitful, and found her to lack candor and honesty. He found [Father]'s as well as [M.W.]'s statements regarding Mother being dishonest and manipulative to be credible. Most importantly, Dr. Shienvold found Mother's lack of stability to have negative effects on the children, and that Mother remains susceptible to continue and/or repeat her previous mistakes.

*Id.* at 15 (internal citations omitted). The record supports the trial court's findings.

Moreover, despite Mother's representation that Child was doing well under the current custody arrangement, the trial court heard evidence to the contrary. Mother admitted during her testimony that Child and his half-brother J.W. both required extensive counseling soon after Mother began dating and became engaged to R.C. N.T. Hearing, 7/19/18, at 129-140. The trial court also heard evidence that around the same time, J.W. was acting out and, on one occasion, attempted to choke Child. *Id.* Accordingly, the record supports the trial court's findings and we find no abuse of discretion.

Further, Mother's argument that the trial court abused its discretion when it relied on an erroneous report lacks merit. The trial court gave Mother an opportunity to cross-examine Dr. Shienvold about his custody evaluation and clear up any discrepancies in her work history. *See* N.T. Hearing,

3/29/19, at 90-150. The trial court acknowledged the errors in Dr. Shienvold's report and opined, "Dr. Shienvold's report further stated that 'it is difficult to ignore the lack of stability that [Mother] has shown in various areas of her life.' The [c]ourt notes that Dr. Shienvold affirmed this conclusion even after Mother's [c]ounsel, on [c]ross-[e]xamination, demonstrated that Mother was not in the Armed Forces as his report states." Opinion and Order at 6. The trial court found Dr. Shienvold's testimony to be credible. We decline to reweigh the evidence or usurp the credibility determinations of the court. As the record supports the trial court's findings, we find no abuse of discretion.

In her second issue, Mother asserts that the trial court erred in its application of the Section 5328 custody factors and that the evidence demonstrates that awarding primary physical custody to Mother would be in Child's best interest. Mother's Br. at 24. Essentially, Mother argues that the record does not support the trial court's findings. Specifically, Mother claims that there is no evidence that Child endured physical abuse from J.W. and that Child was endangered by his relationship with J.W. *Id.* at 26-27. Moreover, Mother argues that the record does not support the trial court's findings that Mother was more likely to alienate Child against Father, and Father was more likely to maintain a more stable, consistent, and nurturing relationship with Child. *Id.* at 29-30. Our review of the record belies these claims.

As discussed above, Mother testified that J.W. attempted to choke Child on one occasion, providing support for the trial court's findings regarding the

relationship between the siblings. *See* N.T. Hearing, 7/19/18, at 129-140. Additionally, our review of the record reveals that Dr. Shienvold's custody evaluation, which was incorporated into the record, provides support for the trial court's findings that Mother is more likely to alienate Child and Father is more stable. *See* Custody Evaluation, dated 3/6/19, at 24-25. Specifically, the custody evaluation concludes that Mother made unilateral decisions regarding Child's therapy without informing Father, was secretive about her relationship with R.C. and decision to move to Nevada, was "pushing" the importance of a relationship with R.C. on Child, had a history of unstable personal relationships, failed to consider the negative emotional impact that her decision to move to Nevada had on Child, and was willing to put her relationship with R.C. first and Child's needs second. *Id*.

Our review of the record reveals that the trial court considered all of the Section 5328 custody factors when rendering its custody decision. The record supports the trial court's findings and, thus, we find no abuse of discretion.

In her final issue, Mother asserts that the trial court abused its discretion when it found that Mother's proposed relocation with her children to Nevada to reside with her husband constituted an alienation of Child from Father and demonstrated Mother's lack of understanding of the importance of stability in Child's life. Mother's Br. at 34. Mother argues that her request to relocate her residence "should not have been used as a factor against her," but fails to cite any legal authority to support this argument. *See id.* at 36. Accordingly,

we find this issue to be waived. *See R.L.P. v. R.F.M.*, 110 A.3d 201, 208–09 (Pa. Super. 2015) (stating that arguments that are not appropriately developed are waived, including those where the party has failed to cite any authority in support of a contention).

In sum, the trial court engaged in an analysis of the Section 5328(a) factors when making its custody determination and the record supports the trial court's findings. Accordingly, we find no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2019