J-S14018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CENDY ARISTY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARIA DOLORES CARBONELL AND | : | No. 65 MDA 2021 |
| PHILLIP SANTANA | : | |

Appeal from the Order Entered December 2, 2020
In the Court of Common Pleas of Berks County Civil Division at No(s):
19-15730


BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                           **FILED JULY 01, 2021**

Appellant, Cendy Aristy ("Mother"), appeals from the December 2, 2020 Order that, *inter alia*, awarded primary physical custody of her biological children to their paternal great-grandmother Maria Dolores Carbonell ("Great-Grandmother").  Upon review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Mother and Phillip Santana ("Father") are biological parents to P.S., Z.S., and T.S., (collectively, the "Children") who were born in 2011, 2013, and 2014, respectively.  Mother and Father lived together from approximately 2011 to 2014 but were never married; they lived primarily with Father's mother ("Grandmother").  According to Mother, Father's gang-related activity, abusive behavior towards her, and eventual incarceration caused their relationship to end soon after the birth of T.S.  After her split from Father,

Mother and Children moved around every few months and eventually became homeless. Children often stayed overnight with Great-Grandmother.

Mother decided to move to Virginia without Children, and in August 2016, Mother signed a "guardianship agreement" that purported to give Great-Grandmother temporary legal and physical custody of Children.[1] Children began to live with Great-Grandmother full-time in Reading. Grandmother lived across the street and helped with Children's care. Father did not live in the home, but stopped by regularly to visit with Children, eat, use the bathroom, and shower. Mother remained in Virginia for a couple of months and returned to visit with Children approximately three times. Mother eventually moved back to Reading, lived near Great-Grandmother, and visited with Children approximately once per week.

In the beginning of 2018, Mother moved to Connecticut and subsequently obtained employment as a server at the Hard Rock Cafe. In November 2018, Mother married P.A. ("Stepfather"), who had served in the U.S. Navy for three years prior to his current employment as a foreman for a stonemason. The two live together in a two-bedroom apartment in Norwich, Connecticut.

On August 15, 2019, Mother filed a Complaint for Custody against Great-Grandmother and Father seeking sole legal and primary physical custody of Children. Soon after, on August 20, 2019, Mother filed a Petition for Special

---

[1] We note that this "guardian agreement" is not legally binding in Pennsylvania.

Relief, requesting partial physical custody of Children pending the custody trial. On September 25, 2019, after a hearing, the court granted Mother's Petition and entered a Temporary Custody Order that awarded Mother partial physical custody of Children every other weekend and daily telephone contact with Children.

After the parties attended a custody conciliation conference, the Custody Master filed a Report recommending that the court award Mother sole legal and primary physical custody of Children. In response, Great-Grandmother filed timely Exceptions as well as a "Counter-Affidavit Regarding Relocation" objecting to Children's relocation to Connecticut.

On June 17 and August 20, 2020, the court held a custody trial. After the first day of trial on June 17, the court issued a Temporary Custody Order that awarded Mother and Maternal Grandmother shared legal and physical custody in a two-week-on, two-week-off cycle pending the next court date.

During the two-day trial, the trial court heard testimony from Mother, Sabrina Vazquez, Mother's cousin; Kimberly Salvodar, Mother's friend; Stepfather; Grandmother; Great-Grandmother; and Children. Father did not participate.

In sum, Mother testified to the largely undisputed events that led to the Children living full-time with Great-Grandmother, including her separation from Father and her twice moving out of state. N.T. Trial, 6/17/20, at 54-60. Mother explained that when she moved to Virginia in 2016 she only intended for Children to stay with Great-Grandmother for a year. *Id.* at 62. Mother

testified that there were numerous times when Great-Grandmother "blocked" her and would not let her communicate with Children, including when she first returned from Virginia and when she initially moved to Connecticut. *Id*. at 60, 65-66. Mother stated that she gave Children's food stamp cards to Great-Grandmother and asked Great-Grandmother several times if she needed money for Children, but Great-Grandmother only requested money one time to pay for a door-to-door van that takes Children from Reading to New York City, the agreed upon meeting point to exchange physical custody of Children. *Id.* at 63-64.

Mother testified that she reached out to Great-Grandmother in 2018 to tell her she was stable and wanted Children to live with her. However, Great-Grandmother wanted "proof" that Mother was stable, and Grandmother claimed that they had already paid for a school program. *Id.* at 64-65. Mother testified that Great-Grandmother does not inform her or include her in Children's medical decisions, but that she has recently been involved with Children's schooling and in communication with their teachers. *Id.* at 69, 70, 84-95. Mother testified that all three Children are performing poorly in school while living with Great-Grandmother. *Id.* at 84-95.

Mother testified that she wants Children to come live with her during the school year and visit with Great-Grandmother during holidays and school break, that Children love Stepfather, and that she has a lot of family support living nearby. *Id.* at 105-112. Mother explained, "I have changed a lot since I lived in Reading. I've been stable since then. There's nothing – nothing

- 4 -

wrong with where I live, how I live my life now.  There's nothing harmful around the kids.  I feel like we - they would be perfect." *Id.* at 110.

Ms. Vazquez testified that she and Mother have known each other for their entire lives and, when she recently visited Mother in Connecticut when Children were visiting, she observed that the Children were "very excited" to be with Mother "as if they were always with her." *Id.* at 33, 36.  She also stated that Children loved Stepfather, were comfortable with him, and were "[a]lways joking around and smiling and laughing." *Id.* at 36.

Kimberly Salvador testified that she has known Mother since 2013 and used to help Mother with transportation to visit Children.  She stated that she currently lives in Massachusetts and sees Mother every other month, and that she has never seen Mother use illegal drugs.  N.T. Trial, 8/20/20 at 9:40 AM, at 38-43.

Stepfather testified that he and Mother live together in a two-bedroom apartment with one of the bedrooms set up with bunkbeds for Children and are actively looking for a bigger apartment. N.T. Trial, 6/17/20, at 53. Stepfather fondly described each of the Children's personalities, and testified that he takes them to the park, plays basketball and baseball with them, watches movies with them, and helps T.S. with writing his letters and numbers. *Id.* at 45-47.  Stepfather testified that they often visit with several of Mother's family members that live close by, including her mother, grandparents, two brothers, and uncle. *Id.* at 48.

Grandmother testified that she lives a block away from Great-Grandmother and sees the Children daily. N.T. Trial, 8/20/20 at 9:40 AM, at 44. Grandmother stated that from September 2019 until the start of trial in June 2020, Mother missed weekend visitation with Children seven times. *Id.* at 48-49. Grandmother stated that Children call Great-Grandmother "mom-mom," listen to her, and there is "no problem." *Id.* at 54. Grandmother has observed Children cry and worry before their visits with Mother, and testified that when Children come back from visits they are happy and don't want to leave again. *Id.* at 54-55.

Great-Grandmother testified that she is 66 years old and rents a four-bedroom house from the Reading Housing Authority where she lives with Children and her daughter. N.T. Trial, 8/20/20 at 10:00 AM, at 3-6. Great-Grandmother explained that she has been caring for Children full-time since 2016, when they were ages 2, 3, and 4, and that they often stayed overnight before they moved in full-time. *Id.* at 10-13. 10-11. Great-Grandmother volunteers at her church and Children are involved in the church's children's group. *Id.* at 7-9. Children participate in Boys and Girls Club, school activities, bingo, as well as therapy for anxiety. *Id.* at 23-24, 74. Great-Grandmother stated that there are a lot of family members that help her care for Children and they are a "team." *Id.* at 15-17, 20.

Great-Grandmother testified that they always celebrate the Children's birthdays, but Mother has only been present for one birthday party, and Mother has never sent any birthday presents when she has been absent. *Id.*

- 6 -

at 18-19. Great-Grandmother testified that she has never received monetary support from Mother from 2016 to 2019 when she cared for Children exclusively, with the exception that Mother helped fund the one birthday party she attended. *Id.* at 19-20.

Great-Grandmother stated that Mother missed four or five weekend visitations prior to the start of the custody trial. She also stated Mother visited with Children about three times when she lived in Virginia, and visited weekly when she returned to Reading. *Id.* at 28, 30-33. Great-Grandmother admitted to blocking Mother one time for a few months because Mother was disrespectful and yelled at her. *Id.* at 15. Great-Grandmother observed that Children do not want to go visit Mother and are happy to return to Great-Grandmother. *Id.* at 35.

Great-Grandmother informed the court that she would like Children to remain with her and continue visits with Mother. *Id.* at 36. Great-Grandmother testified that she always tells Mother it isn't about what is better for Mother or Great-Grandmother, but it is "the kids that we have to think about. They cannot just go all of a sudden." *Id.* at 35.

Children testified *in camera* that they wanted to remain living with Great-Grandmother, and Z.S. stated that all three "voted to visit" with Mother. N.T. Trial, 6/17/20, at 14-15.

On November 23, 2020, the trial court issued Findings of Fact and a Final Custody Order granting Great-Grandmother and Mother shared legal custody, Great-Grandmother primary physical custody, and Mother partial

physical custody of Children. Mother filed a Motion for Reconsideration alleging, *inter alia*, that the trial court failed to specifically address the presumption of custody given to a natural parent over a non-parent pursuant to Section 5327(b) of the Custody Act.

On December 2, 2020, the trial court granted the Motion and issued Amended Findings of Fact, Conclusion of Law, Decision, and Order which analyzed the Section 5328 custody factors, the Section 5337 relocation factors, and the Section 5327 presumption of custody to a natural parent. The Final Custody Order awarded shared legal custody of Children to Mother and Great-Grandmother, primary physical custody of Children to Great-Grandmother, and partial physical custody of Children to Mother. Specifically, the court granted Mother partial physical custody of Children one weekend per month, on holidays, and during the summer.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

**ISSUES RAISED ON APPEAL**

In her Brief, Mother raises the following issues for our review:

I.    Whether it was reversible error to grant [] Great-Grandmother (rather than Mother) primary physical custody of [] Children?

II.   Whether it was reversible error to conclude that Mother had not met her burden of proving that relocation was in the best interests of [] Children?

Mother's Br. at 5.

**LEGAL ANALYSIS**

"We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014). This Court must accept the findings of the trial court that the evidence supports. ***Id***. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." ***K.T. v. L.S.***, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." ***S.W.D.***, 96 A.3d at 401. ***See also*** 23 Pa.C.S. § 5323(a) and (d). The Custody Act requires a trial court to consider the Section 5328(a) custody factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a). Likewise, a trial court must consider ten relocation factors when deciding a Petition for Relocation. 23 Pa.C.S. § 5337(h). Any party proposing a child's relocation has the burden of establishing that the relocation will serve the best interest of the child. 23 Pa.C.S. § 5337(i)(1). Notably, "[i]n a custody case where neither parent is relocating, but the children stand to move a significant distance, trial courts should still consider the relevant factors of [S]ection 5337(h) in their [S]ection 5328(a) best interests analysis." ***D.K. v. S.P.K.***, 102 A.3d 467, 476. (Pa.

- 9 -

Super. 2014). Finally, in a custody action between a parent and a nonparent, there is a presumption that custody shall be awarded to the parent, and that presumption may be rebutted by clear and convincing evidence. 23 Pa.C.S. § 5327(b).

When reviewing child custody matters and the trial court's consideration of the Section 5328(a) custody and Section 5337(h) relocation factors, our paramount concern is the best interests of the child. *Saintz*, 902 A.2d at 512. "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted).

## Primary Physical Custody

In her first issue, Mother avers that the trial court abused its discretion when it awarded Great-Grandmother primary physical custody of Children. Mother's Br. at 27. Mother asserts that the trial court made two findings of fact that are not supported by the evidence: (1) that the guardianship agreement began in 2014 and that Children had been in Great-Grandmother's care during since that time; and (2) that Children had expressed a "well-reasoned" preference to live with Great-Grandmother. *Id.* at 28. Mother then argues that the trial court "overlooked competent evidence" and should have made twelve additional findings of fact. *Id.* at 28-30.

With respect to her first assertion, Mother contends, without citation to the record, that the trial court erred in finding that the parties entered into the guardianship agreement in 2014, when the record reveals that the date of the agreement is 2016. *Id.* Our review of Mother's voluminous Rule 1925(b) Statement raising over twenty separate allegations of error in numerous subsections, including numerous claims that the trial court made errors of fact, indicates that Mother failed to include this specific allegation of error. *See* Rule 1925(b) Statement, 3/1/21, at 1-5. Consequently, the trial court did not address this allegation of error in its Rule 1925(a) Opinion

Pa.R.A.P. 1925(b)(4)(ii) directs that an appellant's Rule 1925(b) statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). Rule 1925(b)(4)(vii) provides that "[i]ssues not included in the [Rule 1925(b) s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). *See Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001) (explaining that any issues not raised in a Rule 1925(b) statement are waived). Because Mother did not raise this allegation of error in her Rule 1925(b) Statement, the trial court failed to address it, and Mother did not provide citation to the error in the record, we conclude that any argument based on this allegation of error is waived.

Mother next avers that the trial court erred when it made a finding that Children had expressed a "well-reasoned" preference to live with Great-Grandmother, because the record does not support the finding. Mother's Br. at 28. Mother argues that the transcript does not reveal any "reason" for Children's preference. *Id.*

Regarding Children's testimony, the trial court opined:

Quite simply, [] Children expressed to the [t]rial [c]ourt that they wished to remain primarily residing with Great-Grandmother – the only caretaker they've truly known. . . .Mother does not like [] Children's preference, which is understandable because it does not align with her preference. Disagreeing with [] Children, however, does not mean what they had to say lacked reason.

Opinion, dated 1/28/21, at 6-7.

Our review of the record reveals that Children did, indeed, express a preference to live with Great-Grandmother and Z.S. informed the court that they all "voted to visit" with Mother in Connecticut. N.T. Custody Trial, 6/17/20, at 14-16. As the record supports the trial court's finding, we find no abuse of discretion.

Finally, Mother argues that the trial court "overlooked competent evidence" and should have made twelve additional findings of fact. Mother's Br. at 28-30. Because the trial court did not make these additional findings, Mother avers, the trial court erred when it concluded that certain custody factors favored Great-Grandmother. *Id.* at 30.

Here, Mother does not challenge the court's application of the custody factors; rather, she challenges the weight the court gave to the evidence. Our

- 12 -

review of the record reveals that the trial court engaged in an analysis of each of the Section 5328 custody factors and made specific findings regarding each factor, which the record supports. *See* Amended Findings of Fact, Conclusions of Law, Decision, and Order, 2/8/20, at 14-21. The trial court found that six factors favored Great-Grandmother, two factors favored Mother, and eight factors were neutral. *Id.* The trial court determined, based on its consideration of those custody factors, that it was in Children's best interest to award primary physical custody to Great-Grandmother. The trial court opined:

> In the matter at hand, the [c]ourt has considered all of the foregoing analyses regarding the [p]arties, [] Children, proposed relocation, and [] Children's best interests in reaching the determination that Mother's presumption of primary custody has been rebutted by clear and convincing evidence. . . Mother willingly placed and left [] Children with [] Great-Grandmother with whom they have resided the majority of their lives. [] Children have clearly developed a strong emotional bond with Great-Grandmother, and they expressed their well-reasoned preference for staying primarily with her. It was Great-Grandmother who devoted herself to caring for [] Children's emotional, physical, and academic needs. Great-Grandmother has provided [] Children with a safe, stable home environment. Great-Grandmother has granted [] Children opportunities to participate in programs at church and the local boys and girls club. She has been the one tending almost exclusively to [] Children's medical needs since at least 2014. Stability in [] Children's lives is of no small import, as prescribed for analysis by statute in the fourth factor. As such, the [c]ourt finds there is clear and convincing evidence supporting [] Children remain primarily with Great-Grandmother.

*Id.* at 27-28. The record supports the trial court's findings and we decline to usurp the credibility determinations of the trial court or reweigh the evidence. Accordingly, we find no abuse of discretion.

**Relocation**

In her second issue, Mother avers that relocation to Connecticut is in Children's best interest and the trial court abused its discretion when it concluded otherwise. Mother's Br. at 37. In evaluating the Section 5337 relocation factors, Mother argues that the trial court failed to consider that Children have a lifelong relationship with Mother, Children's preference to stay in Pennsylvania was coerced, and relocation would provide Children with better schools, male role models, and an opportunity to move out of the public housing where they currently reside with Great-Grandmother. *Id.* at 35-37.

Once again, Mother does not challenge the court's application of the relocation factors; rather, she challenges the weight the court gave to the evidence. Our review of the record reveals that the trial court engaged in an analysis of the Section 5337 relocation factors and made specific findings regarding each factor, which the record supports. *See* Amended Findings of Fact, Conclusions of Law, Decision, and Order, 2/8/20, at 21-27. The trial court found one factor to be in favor of relocation, and made a finding that "relocation would enhance the general life quality for Mother, especially in regard to financial and emotional opportunities." *Id.* at 24. The trial court found that the remaining nine factors were either opposed to relocation or neutral. *Id.* at 21-27. Based on its consideration and analysis of the

relocation factors, the trial court concluded that relocation was not in Children's best interest at this time, opining:

> [C]onsidering other factors and the wellbeing and needs of [] Children who are clearly bonded with their Great-Grandmother and their community, the [c]ourt finds that Mother has not met her burden of establishing the relocation would be in the best interest of [] Children.

*Id*. at 27. Our review of the record supports the trial court's findings. As stated above, we decline to usurp the trial court's credibility determinations or reweigh the evidence. As such, we find no abuse of discretion.

**CONCLUSION**

In conclusion, the trial court did not abuse its discretion when it awarded primary physical custody of Children to Great-Grandmother and concluded that relocation to Connecticut was not in Children's best interest.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/01/2021

- 15 -