J-A22024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH COYLE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAMMY YOUNG | : | |
| | : | |
| Appellant | : | No. 429 WDA 2022 |

Appeal from the Order Entered March 17, 2022
In the Court of Common Pleas of Indiana County Civil Division at No(s):
10258 CD 2020

BEFORE:   OLSON, J., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: NOVEMBER 16, 2022**

Tammy Young ("Mother") appeals from the March 17, 2022 Order entered in the Indiana County Court of Common Pleas that granted shared legal and physical custody of N.C. ("Child") to Mother and Joseph Coyle ("Father").  Upon review, we affirm.

In its March 17, 2022 Opinion and Order of Court, the trial court set forth a detailed procedural and factual history, as well as a summary of evidence, which we adopt for purposes of this appeal.  ***See*** Opinion, filed 3/17/22, at 1-10.  In sum, Mother and Father (collectively, "Parents") were never married and are parents to four-year-old Child, who was born in November of 2017.  Parents were in a long-term romantic relationship and lived together until they broke up when Child was eight months old.  Father

_____

[*] Retired Senior Judge assigned to the Superior Court.

has two older children from a previous marriage. Father is currently remarried to Stepmother, who also has an older child from a prior relationship.

When Parents broke up, Mother had primary physical custody of Child and Father had informal visitation. On January 10, 2020, when Child was two years old, Father filed a Complaint for Custody requesting shared physical and legal custody of Child. An interim custody order provided Father with visitation every other weekend and Wednesday evenings. The court held a custody trial on February 28, 2022, and March 1, 2022.

The court heard extensive testimony from numerous witnesses, including: Father, Stepmother, a visitation supervisor, Parents' friend, Father's ex-wife, Parents' co-worker, Mother's cousin, Mother's aunt, and Mother's parents. After evaluating the sixteen custody factors, the court found that the factors did not favor one party over the other. The court awarded shared physical and legal custody to Parents, with a schedule that increased Father's custody every few weeks over the summer months until shared physical custody was 50/50.

Mother timely appealed and filed a Pa.R.A.P. 1925(b) statement. The trial court relied on its March 17, 2022 Opinion and Order of Court in lieu of a Rule 1925(a) opinion.

Mother raises the following issues for our review:

1. Did the trial court abuse its discretion and commit an error of law when its consideration of the custody factors was based on factual findings and inferences that were not contained in the evidence of [] record.

2. Did the trial court abuse its discretion and commit an error of law by not giving full consideration to the best interests of [Child] (including but not limited to the impact to the child of the substantial change in custody and whether that change served to enhance a parent/child relationship) when moving from Mother as the primary physical custodian to (eventually) a shared 50/50 schedule for Mother and Father and by relying on inaccurate information.

Mother's Br. at 18.

**A.**

This court reviews a custody determination for an abuse of discretion, and our scope of review is broad. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake. *J.C. v. K.C.*, 179 A.3d 1124, 1130 (Pa. Super. 2018).

The Custody Act requires a trial court to consider all of the Section 5328(a) custody factors when "ordering any form of custody," and further requires the court to give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a). A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." **S.W.D.**, 96 A.3d at 401. **See also** 23 Pa.C.S. § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013).

When reviewing child custody matters and the trial court's consideration of the Section 5328(a) custody factors, our paramount concern is the best interests of the child. **See Saintz**, 902 A.2d at 512 (explaining that this Court's "paramount concern and the polestar of our analysis" in custody cases is the best interests of the child) (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." **D.K.D. v. A.L.C.**, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." **S.C.B. v. J.S.B.**, 218 A.3d 905, 916 (Pa. Super. 2019). Finally, in any action regarding the custody of the child between the parents

of the child, there shall be no presumption that custody should be awarded to a particular parent and no preference based upon gender. 23 Pa.C.S. §§ 5327(a) and 5328(b).

**B.**

In both of her issues, Mother avers that the trial court abused its discretion when its consideration of the custody factors was based on factual findings and inferences that were not contained in the record. Mother's Br. at 23. Mother concedes that the trial court did an analysis of the sixteen custody factors but contends that the trial court made two factual findings that were not supported in the record. *Id.* at 25-26.

Mother first avers that the trial court erred when it found that both parties live in the United School District because the record reflects that only Mother lives in that school district. *Id.* at 26-27.

Our review of the record confirms Mother's assertion and reveals that Father does not live in the United School District, but Mother does. N.T. Trial, 2/28/22, at 7, 30-31; N.T. Trial, 3/1/22, at 290. Father testified that he would like Child to attend the school in Mother's school district when Child is school age because the school is highly rated. N.T. Trial, 2/28/22, at 30-31. When analyzing custody factor four—the need for stability and continuity in the child's education, family life, and community life—the trial court found, in relevant part:

> [Child] is currently too young for school and **both parties live in the United School District.** While the [c]ourt recognizes that [Child] has spent more time with Mother throughout his life,

- 5 -

Father desires to be more active in [Child]'s life. The evidence supports a finding that Father's increased involvement in [Child]'s life will promote better continuity with his family, including two step-siblings. The testimony presented by both [p]arties show that each party is involved in [Child]'s life and want what is best for [Child]. The [c]ourt finds that both parties are not only capable, but have shown a[] desire and intent to provide stability and continuity in [Child]'s life. Accordingly the [c]ourt finds this factor is neutral.

Trial Ct. Op., filed 3/17/22, at 15 (emphasis added).

As stated above, we agree with Mother's assertion that the trial court made a mistake of fact when it found that Father lived in the United School District. However, Mother fails to explain how this incorrect factual finding impacted the trial court's analysis of custody factor four or the trial court's overall disposition. Notably, Child was not yet old enough to attend school when the trial court analyzed factor four—the need for stability and continuity in Child's life. Essentially, Mother fails to assert that she suffered any actual harm as a result of the trial court's mistake. Accordingly, Mother is not entitled to relief on this issue. *See J.C.*, 179 A.3d at 1130 (explaining that, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake).

Mother next avers that the court erred when it found that both parties are boilermakers by trade and only work several weeks per year because the record reflects that it is Mother who works up to six weeks out of the year while Father works a full-time job. Mother's Br. at 27. Mother argues that the trial court relied on this inaccurate information about Father's work schedule when it increased Father's physical custody. *Id.* at 31. Mother avers

that the practical effect of this custody change is a significant increase in physical custody time to Stepmother, who will be watching Child when Father is at work, and a significant decrease in physical custody time for her. *Id.* at 31. Finally, Mother argues that increased time with Stepmother is not in Child's best interest and fails to further the trial court's intended effect of strengthening the bond between Child and Father. *Id.*

Upon review, we agree with Mother that the trial court made a mistake of fact regarding Father's work schedule. At trial, Father testified that he currently has a three-month contract working as a welder fabricator with a set work schedule of 6:00 AM to 2:00 PM Monday through Friday. N.T. Trial, 2/28/22, at 12. Father further testified that he intends to continue working when his contract ends in two months, and he recently had an interview for a job as a boiler operator, which would be a rotating shift. *Id.* at 13. Father and Stepmother both testified that Stepmother would be available to help care for Child when, and if, Father's work schedule changes. *Id.* at 31, 44, 115.

When analyzing custody factor twelve—each party's availability to care for the child or ability to make appropriate child-care arrangements—the trial court found:

> Both parties are boilermakers by trade and **work several weeks out of the year**. Accordingly, child-care would likely not be needed. However, in the event that child-care is needed, Father's wife works from home and has flexible hours, allowing for her to watch [Child] when needed. Mother also testified that her parents and aunt can watch [Child] if needed. This [c]ourt finds that both parties have presented appropriate child[-]care arrangements. Accordingly, this factor is neutral.

Trial Ct. Op. at 20-21.

We agree that the trial court incorrectly characterized Father's work schedule as part-time when analyzing custody factor twelve. However, we are unpersuaded by Mother's argument that the trial court relied on this mistake of fact when the court increased Father's physical custody and, therefore, Mother was prejudiced. Notably, the court heard evidence that Father's employment was temporary at the time of trial. When analyzing custody factor twelve, the trial court made an alternative finding and concluded that, in the event child-care was needed, both parents presented appropriate child-care arrangements. This finding is supported by evidence in the record. Moreover, it is well-settled that a parent's work schedule may not deprive a parent of custody if suitable arrangements are made for the child's care in the parent's absence. *Johnson v. Lewis*, 870 A.2d 368, 374 (Pa. Super. 2005). Finally, Mother offers no legal authority to support her position that a trial court should not increase a parent's physical custodial time to 50/50 if the practical effect is spending more time with a stepparent and other household members.

## C.

In conclusion, Mother fails to establish that the trial court's two mistakes of fact prejudiced her or impacted the trial court's overall disposition. Accordingly, she is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/16/2022