J-A04017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| VASYL S. KOVALCHUK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YELENA V. KOVALCHUK | : | |
| | : | |
| Appellant | : | No. 1420 MDA 2022 |

Appeal from the Order Entered September 30, 2022
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2016-03340

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: MARCH 8, 2023**

Yelena V. Kovalchuk ("Mother") appeals from the September 30, 2022 order that, *inter alia*, awarded sole legal and physical custody of the parties' children, sixteen-year-old M.K. and fourteen-year-old J.K. (collectively, "Children") to their father, Vasyl S. Kovalchuk ("Father").

We glean the following factual and procedural history from the trial court's September 30, 2022 Opinion and Order of Court.  The parties have been divorced since 2019 and involved in a highly contentious custody case since 2016.  Relevant to this appeal, a July 19, 2019 custody order granted the parties shared legal and 50/50 physical custody of Children on an alternating weekly basis.  On March 14, 2022, the trial court found Mother in contempt of that custody order, fined Mother $500, and ordered her to pay legal fees.  Despite the finding of contempt, Children did not return to Father's care after that order.  On March 30, 2022, Father filed another petition for

contempt and a petition for modification of custody requesting primary physical custody of Children and averring parental alienation. In response, on April 14, 2022, Mother filed a petition to modify custody and requested sole physical custody, averring that Children did not want to live with Father. The court appointed a guardian *ad litem* ("GAL") and ordered all parties to comply with counseling for Children.

The trial court held several custody hearings on June 21, 2022, July 6, 2022, July 7, 2022, and August 4, 2022[1], which were protracted in part due to Mother's refusal to answer certain questions. The court heard testimony from Children's therapist Jamie Orris, Father, Children, Mother, and the GAL.

On June 21, 2022, Ms. Orris informed the court that she has been providing individual counseling services to both Children for approximately two years. She testified that historically Father transported Children to counseling and is the primary parent involved in their counseling. Ms. Orris explained that Children had disagreements with their Father over homework and chores like cleaning their bedroom. Ms. Orris testified that Father was

_____

[1] The August 4, 2022, transcript is not contained in the certified record and despite this Court's best efforts, we have failed to ascertain its whereabouts. Generally, it is the responsibility of the appellant to supply this Court with a complete record for purposes of review, and a failure to ensure that the certified record contains sufficient information to conduct a proper review constitutes a waiver of the issues. **Smith v. Smith**, 637 A.2d 622, 623 (Pa. Super. 1993). However, upon review of other record filings in the instant case, we have determined that the August 4, 2021, transcript contains Mother's testimony which, as discussed *infra*, the trial court found to be mostly incredible. We decline to usurp the trial court's credibility determinations. As such, the missing transcript does not affect our review of Mother's issues and we decline to find waiver.

very involved in helping J.K. improve in school by sitting down with her every night to help with homework, which escalated frustrations between Father and J.K because J.K. does not have to do homework at Mother's house. Ms. Orris denied that Father was abusive.

Father testified that he lives alone when Children are not in his care. Father explained that on Friday, March 25, 2022, instead of taking the school bus to Father's house pursuant to the alternating weekly custody schedule, Children took the bus to Mother's house. Father testified that he had custody from March 11, 2022, to March 18, 2022, and Children expressed excitement about returning to Father's custody to play with a guitar at Father's house. Father noticed a change on March 25, 2022, when Children's text messages became short and disrespectful to him. Father went to Mother's home on March 25, 2022, to attempt to regain custody of Children. Mother refused to talk to Father, and M.K. stated to Father that he decided to stay with Mother. Father went to Mother's house a total of nine times to attempt to regain custody, until Mother threatened to seek a restraining order. Father testified that Mother utilizes the differences in parenting styles to manipulate Children into believing that Father is abusive because he requires them to clean their rooms and do their homework. Father denied making disparaging comments about Mother to Children and confirmed that he primarily takes Children to their therapy appointments and is the only parent who attends school meetings. According to Father, since Mother unilaterally took custody of

Children, J.K. has had five unexcused absences and M.K. has had two unexcused absences from school.

On July 6, 2022, Children testified *in camera* that they want to choose their own custody schedule and do not want to live with Father. J.K. stated she did not want to visit Father because he yells at her about homework and cleaning her room. M.K. stated he did not want to visit Father because Father pushed him on the shoulder six years ago. Both Children stated that Father and his family disparage Mother.

On July 7, 2022, after the court gave Mother an opportunity to consult with criminal counsel, she pleaded her Fifth Amendment right against self-incrimination and refused to answer questions surrounding Children's return to her home on March 25, 2022.

On the same day, in the middle of the custody proceeding, after considering the testimony to date and GAL's most recent report, the trial court entered a temporary order granting Father sole legal and primary custody of Children and ordering Mother to have supervised physical custody of Children.

On July 8, 2022, due to Mother's refusal to cooperate, the court issued an emergency order directing police to assist with the transfer of custody from Mother to Father. On July 20, 2022, Father filed a petition for special relief alleging that Children snuck out of his home at approximately 3:00 AM on July 10, 2022, and returned to Mother's home. In response, the court issued an order directing police to locate Children and return Children to Father's care consistent with the terms of the temporary custody order.

On July 25, 2022, the GAL filed a supplemental report and recommended that Father retain sole legal custody and that Father and Mother share 50/50 custody of Children **if** Mother encourages Children to comply. However, if Children's defiance continued to result in safety issues, the GAL recommended Children be removed from Mother's custody and placed in foster care until they agreed to return to Father's custody. The GAL also recommended that all parties comply with reunification counseling, and that law enforcement and children and youth services assist with the enforcement of the custody order.

The custody proceedings resumed on August 4, 2022. Mother testified that she was surprised when Children showed up at her house on March 25, 2022, and that she had been packing to go away on a trip. Mother further testified that, in the weeks following March 25, 2022, she encouraged Children to speak to Father face to face, but Children refused to speak to him or go to his house. Mother explained that she was requesting sole custody because she was more flexible with Children, and Children were more relaxed and happier at her house because Father yells at Children causing them stress. Mother could not recall if Children had unexcused absences in her care.

On September 30, 2022, after considering the custody factors, the trial court issued an order and opinion that granted Father's contempt and modification petitions and ordered Father to have sole legal and physical custody of Children. The court further ordered Mother to have supervised

visitation with Children unless or until a therapeutic reunification counselor recommended an increase or decrease in visitation.

Mother filed a timely *pro se* appeal. The trial court did not order Mother to file a Pa.R.A.P. 1925(b) statement and relied on its September 30, 2022 Opinion and Order of Court in lieu of a Rule 1925(a) opinion.

In her *pro se* brief, Mother raises the following issue for our review: "whether the [c]ourt's modified order of custody [] arising under the guise of a contempt petition is not in the [C]hildren's best interests and is an abuse of discretion." Mother's Br. at 6.

This court reviews a custody determination for an abuse of discretion, and our scope of review is broad. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party

claiming error suffered prejudice from the mistake. *J.C. v. K.C.*, 179 A.3d 1124, 1130 (Pa. Super. 2018).

The Custody Act requires a trial court to consider all of the Section 5328(a) custody factors when "ordering any form of custody," and further requires the court to give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a). A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." *S.W.D.*, 96 A.3d at 401. *See also* 23 Pa.C.S. § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

When reviewing child custody matters and the trial court's consideration of the Section 5328(a) custody factors, our paramount concern is the best interests of the child. *See Saintz*, 902 A.2d at 512 (explaining that this Court's "paramount concern and the polestar of our analysis" in custody cases is the best interests of the child) (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together

to raise their child." ***S.C.B. v. J.S.B.***, 218 A.3d 905, 916 (Pa. Super. 2019). Finally, in any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent and no preference based upon gender. 23 Pa.C.S. §§ 5327(a) and 5328(b).

The crux of Mother's argument is that the trial court failed to consider all the relevant custody factors and place greater weight on those factors which affect the safety of Children. Mother's Br. at 25-26. Mother also argues that the trial court improperly modified custody as an incident of the contempt petition. ***Id.*** at 27-28. Both claims are devoid of merit.

In its opinion, the trial court found eleven custody factors to favor Father, two custody factors to be equal, and three factors to be not applicable. Tr. Ct. Op., 9/30/22, Exhibit B. The trial court found that Father is stricter than Mother, Father is more involved with children's schooling, Father complies with children's counseling schedule while Mother does not, and Mother perpetuates a belief in children that Father is verbally abusive towards them without any concrete evidence. ***Id.***

Mother's argument that the court should have placed more weight on the factors affecting safety is curious because, with regards to the past and present abuse committed by either party, the court found this factor to favor Father. Specifically, the court found:

> No competent or credible evidence of physical abuse by either party. The concerns related to Father's parenting style is addressed by the GAL's report and credited testimony of the

therapist of [C]hildren. The concerns related to Mother's manipulation of [Children] in terms of their relationship with Father is addressed by the GAL's report. Mother is deemed to have interfered and manipulated [C]hildren to a degree that her household is not appropriate for [C]hildren absent a supervised setting for a period of time until she is capable of demonstrating refrain from continued manipulation.

*Id.*

Notably, the court found most of Mother's testimony to be incredible, including her explanations regarding why Children were not abiding by the custody order and residing with Father every other week. *Id.* at 16-17. The court concluded:

> In deciding the [m]odification [p]etitions filed by the parties in this trying custody action, the evidence presented at the multiple hearings was carefully analyzed and applied to the sixteen best interest custody factors. The factors overwhelmingly favor Father demonstrating the best interests of [C]hildren are better served with Father having primary physical custody and overriding legal custody.

*Id.* at 18. Our review of the record supports the trial court's findings. We decline to reweigh the evidence or usurp the trial court's credibility determinations. Accordingly, we discern no abuse of discretion.

Moreover, Mother's claim that the trial court improperly modified custody as an incident of the contempt petition is belied by the record. We acknowledge that "a court may not permanently alter custody in the context of a contempt proceeding if a formal petition to modify has not been filed by one of the parties." *Langendorfer v. Spearman*, 797 A.2d 303, 308 (Pa. Super. 2002). However, instantly, Mother's petition to modify custody was

before the court, so she was clearly on notice that custody was at issue. Moreover, the court repeatedly stated on the record that it was considering the parties' modification petitions as well as Father's contempt petition. Accordingly, Mother's claim is devoid of merit.

In sum, the trial court did not abuse its discretion when, after considering the Section 5328 custody factors, it granted sole legal and physical custody to Father.[2]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2023

---

[2] On February 23, 2023, and March 1, 2023, M.K. filed a *pro se* Motion for Private Petition with the Superior Court requesting, *inter alia*, that this Court adjudicate Children dependent. We deny this motion without prejudice for M.K. to seek appropriate relief in the Cumberland County Court of Common Pleas.