**Kerry R. SAINTZ, Appellee**

v.

**Jennifer RINKER, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 15, 2006.
Filed June 1, 2006.

Terry W. Despoy, Altoona, for appellant.

Michael J. Adams, Altoona, for appellee.

BEFORE: FORD ELLIOTT, P.J., DEL SOLE, P.J.E. and JOYCE, J.

OPINION BY DEL SOLE, P.J.E.:

¶ 1 This is an appeal from the trial court order directing that primary custody of the parties' daughter (J.S.) be with Appel-

lee Father. Finding competent evidence to support the trial court's award, we affirm.

¶ 2 Father and Mother were married in 1992 and J.S. was born that same year. At the time of J.S.'s birth, Mother's two children from a previous relationship, B.N. and S.N., were in Mother's custody.[1] In 1993, Mother and Father separated and after several failed attempts at reconciliation, they divorced in 1995. After the divorce, the parties initially exchanged custody by agreement; however, in 1999 a custody order was entered wherein both parties shared legal custody of J.S. and Mother had primary physical custody of J.S. subject to Father's periods of partial custody. In 1998, Mother married J.R. and two children, C.R. (d.o.b. 5/6/99) and A.R. (d.o.b. 10/29/01), were born to this union.[2]

¶ 3 In April 2004, Father filed a Petition to Modify Custody and later filed a Motion to Compel Mental Examinations of himself, Mother, and J.S. The trial court ordered Mother, Father and J.S. to undergo a comprehensive psychological evaluation for custody placement purposes with Lynn Kagarise, a licensed psychologist. Mr. Kagarise conducted the evaluations and his reports were made part of the record at the February 2005, custody hearing. At the hearing, the trial court was also presented with testimony from the parties, J.S.'s counselor Mary Frontino, and Mr. Kagarise. Additionally, the trial court conducted an *in camera* one-on-one interview with J.S. Following the hearing, the trial court found that based on the totality of the credible testimony, J.S.'s best interests would be effectuated by continuing the parties' shared legal custody of J.S., and transferring primary custody to Fa-

ther subject to partial custody of Mother. Mother's subsequent Motion for Reconsideration was denied and this timely appeal followed wherein Mother presents the following issues for our review:

1. Was the Lower Court's decision to transfer custody of [J.S.] from [Mother] to [Father] contrary to the child's best interest?

2. Did the Lower Court err and/or abuse its discretion by ordering a transfer of the residential custody of [J.S.] despite the fact that [J.S.] is twelve (12) years of age going on thirteen (13) and exhibited a strong preference to reside with [Mother]?

3. Did the Lower Court err and/or abuse its discretion by transferring residential custody of [J.S.] to [Father] when such a transfer is contrary to the best interest on [J.S.] because it results in the separation of [J.S.] from her siblings?

4. Did the Lower Court err and/or abuse its discretion by ordering a transfer of residential custody of [J.S.] from [Mother] to [Father], based largely upon the testimony of [Mr. Kagarise] whom [J.S.] related a previous desire to be with [Father], when [J.S.] later retracted her preference and testified that it was [Father] who put her up to calling [Mr. Kagarise] and that [Father] was putting things in her head including negative ideas about [Mother].

5. Did the Lower Court err and/or abuse its discretion by transferring primary/residential custody to [Father] when the same was contrary to the best interest of [J.S.] given the fact that the evidence reveals that

---

1. At the time of the hearing, B.N. and S.N. were adults and no longer residing with Mother.

2. At the time of the hearing, Mother and J.R. were separated.

[Father] was not as willing to share the child with [Mother] as she was with him.

6. Did the Lower Court err and/or abuse its discretion by not providing for the three hour travel time between Altoona and Harrisburg when it comes to the transfer of [J.S.].[3]

Brief for Appellant at 7–8.

¶ 4 Our standard of review in child custody cases is as follows:

Our paramount concern and the polestar of our analysis in this case, and a legion of prior custody cases is the best interests of the child. The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

Further, on the issues of credibility and weight of the evidence, we defer to the findings on the trial judge. Additionally, appellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record.

*Arnold v. Arnold,* 847 A.2d 674, 677 (Pa.Super.2004) (citations and quotations omitted).

¶ 5 Mother contends that the trial court failed to properly consider J.S.'s desire to remain with Mother.[4] While Mother acknowledges that J.S. repeatedly told Mr. Kagarise and Ms. Frontino that she wished to live with Father, she contends that because J.S. recanted that desire during the *in camera* interview with the trial court, the trial court abused its discretion by failing to honor the child's wishes.

¶ 6 Initially we note that while a child's expressed desire to remain with a particular parent is an important factor to consider in reaching a custody determination, it is not a controlling factor. *Johns v. Cioci,* 865 A.2d 931, 943 (Pa.Super.2004).

¶ 7 In the present case, both Mr. Kagarise and Ms. Frontino testified that during their discussions with J.S., the child consistently indicated a desire to live with Father but was afraid to communicate that desire with her Mother. Ms. Frontino testified that when Mother was confronted with J.S.'s desire to live with Father, Mother dismissed the child's feelings and refused to talk about it further. Ms. Frontino's testimony was corroborated by Mr. Kagarise, who testified that Mother was capable of psychologically manipulating J.S. Mr. Kagarise noted that during his psychological examination of J.S., while Mother was not present, J.S. spontaneously stated that she had wanted to live with her Father for the previous two or three years but could not express this to Mother

---

**3.** Mother chose not to pursue this issue on appeal. Appellant's Brief at 22.

**4.** We note that issues 2 and 4 as set forth in Appellant's Statement of Questions Involved both relate to J.S.'s statements regarding which parent she wished to live with. Therefore, we address them together.

for fear of hurting Mother's feelings and fear of emotional retribution. Of additional importance to the trial court, although J.S. did inform the trial court that she wanted to live with Mother during the *in camera* interview, she also admitted that Mother informed her that if she went to live with Father, Mother "never want[ed] to see [her] again." N.T., 2/15/05, at 260. Later in the *in camera* interview, J.S. explained that after she informed Mother that she wished to live with Father, she knew Mother was upset because Mother stated "you can live with your dad but I don't ever want to see you again." *Id.* at 271.

¶ 8 The trial court concluded, based on the totality of the testimony presented, "that [J.S.'s] response that she wanted to live with her mother was coerced by her knowledge that her mother would have access to her responses." Trial Court Opinion at 9. The trial court found J.S.'s indication that she wanted to live with Mother incredible; rather, the trial court credited the spontaneous statements J.S. made to Ms. Frontino and Mr. Kagarise. As the trial court clearly gave considerable attention to the child's desires and determined that her actual desire was expressed through her unguarded discussions with Ms. Frontino and Mr. Kagarise, and that determination is supported by the record, we find no abuse of discretion on the part of the trial court.

¶ 9 Mother next contends that the transfer of primary custody to Father was contrary to J.S.'s best interests because it separates her from her siblings. In support of this contention, Mother correctly points out that absent compelling reasons to the contrary, the policy in Pennsylvania is to permit siblings, including half-siblings, to be raised together. *See Johns,* 865 A.2d at 942. However, the policy of keeping siblings together is only a consideration and not a determinant of custody arrangements. *Id.*

¶ 10 Here, it is clear that the trial court was aware of the policy of keeping siblings together when possible. However, the trial court found that it was in J.S.'s best interest to be separated from the younger siblings. The testimony presented at the hearing revealed that while at Mother's home, J.S. is overburdened by feelings of responsibility for the physical and emotional welfare of C.R. and A.R. Ms. Frontino testified that when J.S. is at Mother's house she is often put in the position of "referee" between Mother and C.R. N.T., 2/15/05, at 9. Both Ms. Frontino and Mr. Kagarise found that the only hesitation J.S. expressed about going to live with Father was a concern for the safety of the younger children. The trial court found that it was in the best interest of J.S. to be relieved of that responsibility. We conclude that the trial court's decision to separate the siblings is supported by a compelling reason and in the best interest of J.S.

¶ 11 We further note, as did the trial court, that under the structure of the order, the children are not truly separated. Pursuant to the order, Mother, who is separated from C.R. and A.R.'s father, has custody of C.R. and A.R. on the weekends that she also has custody of J.S. during the school year. Likewise, during the summer, the order is structured so that Mother has custody of J.S. on the same alternating weeks as she has custody of the younger children.

¶ 12 Lastly, Mother contends that the trial court abused its discretion by transferring custody to Father because Father is not willing to accommodate a shared custody arrangement. Mother offers no argument in support of this claim nor directs this Court to any supporting evidence in the record. Furthermore, in addressing this contention, the trial court

found that Father testified credibly that he believed J.S.'s relationship with Mother was important. The trial court noted that based upon the psychological evaluations, Father was willing to abide by any custody order to enable J.S. to share time with Mother and siblings. Further, the trial court found Mother's testimony to be self-serving and incredible. Relying on the psychological evaluations, the trial court noted that in addition to Mother's questionable parenting skills, Mother actively attempted to interfere with and/or alienate J.S. from maintaining a relationship with Father. As the trial court's findings are supported by the record, we find no abuse of discretion.

¶ 13 It is clear from the well-written opinion of the trial court that the trial court's decision was the result of a careful analysis of the law, the facts of this case and the trial court's opportunity to assess the credibility of each of the witnesses. As such, we find no abuse of discretion on the part of the trial court in concluding that it is in J.S.'s best interest to reside with Father.

¶ 14 Order affirmed.