J-S38017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NICOLE GHASSA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MERCY IBRAHIM GHASSA | : | No. 1010 WDA 2021 |

Appeal from the Order Entered August 12, 2021
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-20-007753

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                **FILED:  February 23, 2022**

Appellant, Nicole Ghassa ("Mother"), appeals from the August 12, 2021 Order[1] that denied her Petition for Relocation and awarded shared legal and conditional physical custody[2] of then-five-year-old Z.G. and then-three-year-old twins I.G. and D.G. (collectively, "the Children") to her and Appellee, Mercy Ibrahim Ghassa ("Father").  Upon review, we affirm.

Mother and Father were married in 2014 and are parents to the Children, who have resided in the marital home in Pittsburgh since birth.  Mother has worked as a respiratory therapist in a hospital setting for the past ten years,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Order is dated August 6, 2021, but appears on the docket August 12, 2021.

[2] As discussed *infra*, the trial court awarded physical custody of the Children conditioned on whether Mother chose to live in Father's school district.

which includes both day and night shifts. Father immigrated from Syria with his siblings and speaks Arabic as his primary language. Father worked at a restaurant until the Children were born, and then began driving for the ridesharing companies Uber and Lyft so that he could have a flexible schedule and stay home with the Children when Mother was working.

In April 2020, Mother read Father's text messages from a co-worker and became upset. The parties had a physical altercation. On May 7, 2020, Mother removed the Children from the martial home at approximately 8:45 PM, while Father was at the grocery store, and took the Children to her parents' home in Erie. Mother did not inform Father that she was leaving. Rather, Father viewed the parties' security camera when he returned home to learn that Mother had left with the Children.

On May 19, 2020, Mother filed a Complaint for Divorce, which included a count for Custody. On May 29, 2020, upon agreement of the parties, the court issued an interim custody order granting the parties shared legal custody and shared physical custody of the Children to occur on a week-on, week-off basis. On June 4, 2020, Mother filed a Notice of Relocation from Pittsburgh to Erie to pursue an employment opportunity, which Father opposed. On July 27, 2020, Mother filed a Petition for Relocation. After a judicial conciliation conference where the parties were unable to reach an agreement regarding the relocation petition, the trial court scheduled the matter for trial.

The trial court held a trial on the relocation petition on April 23, 2021, June 17, 2021, and July 29, 2021, respectively. The court heard testimony,

from Mother, Mother's mother ("Maternal Grandmother"), Father, Father's older sister ("Paternal Aunt"), and Father's niece. While the extensive testimony spanned three days, we summarize the relevant evidence as follows.

Briefly, Mother testified that she left Father because she was scared of him after their physical altercation in April 2020. Mother testified that she confronted Father after she discovered text messages between Father and a female co-worker. Father then forced her to the floor and physically restrained her by laying on top of her, causing bruising to her arm and wrist and a cut on her foot. Mother testified that she did not contact the police or file for a protection from abuse order, but instead, immediately after the altercation, contacted Paternal Aunt to mediate.

Mother stated that she moved into her parents' three-bedroom home in Erie with the Children after her parents offered her a rent-to-own arrangement. Mother explained that her parents moved into a finished basement apartment in the same home and are available to help with the Children. Mother testified that the house has a yard with a swing set, the Children have friends in the neighborhood, and the house is close to a beach, zoo, tumbling center, and soccer facility where the Children participate in activities. Mother testified that she obtained employment as a respiratory therapist in Erie with more room for advancement than her previous job, and that it is more affordable for her to live in Erie than Pittsburgh.

Mother testified that when she lived with Father, she was the primary caretaker of the Children when she wasn't working, she would take Children to activities, and she was the one who would fill out all of the school paperwork and ensure that Z.G. was completing schoolwork. Mother stated that Father never took the Children anywhere alone and when the Children were with Father, they were always playing on electronic devices or watching television. Mother explained that she has a lot of extended family in Erie, including her parents, sister, great-grandmother, paternal aunts and uncles, and cousins. Mother acknowledged that Father had an extensive extended family but denied that they were helpful with the Children. However, Mother confirmed that Father's family had a text message group to discuss the Children's schedules and that his family members would often stop by to help with bedtime and stay overnight if needed.

Mother proposed a custody schedule where she would have physical custody of the Children during the week and Father would have physical custody every weekend during the school year, and during the summer months the parties would share 50/50 physical custody.

Maternal Grandmother testified that the Children were thriving in Erie, and that she was healthy and able to drive the Children to activities and help with their care.

Father testified that he is a very involved caretaker for the Children, wakes up with them in the middle of the night, takes them to different activities like soccer and swimming, shops with them, and cooks for them.

Father testified that he continues to live in the house that the Children have always lived in, that they have friends in the neighborhood, and that they have a fenced in backyard with toys. Father testified that he filled out school paperwork for the Children to enroll in Headstart and Kindergarten, that he helps Z.G. with her schoolwork, and that he is involved in the Children's medical care. Father testified that he is teaching the Children Arabic as well as English.

Father denied ever physically abusing Mother or cheating on Mother. Father testified that during the April 2020 physical altercation, Mother was intoxicated and hit him repeatedly in the face after reading his text messages, causing his face to bleed. Father confirmed that the parties contacted Paternal Aunt to mediate after the fight.

Father proposed a custody schedule where he would have physical custody of the Children during the week, Mother would have physical custody three out of four weekends per month during the school year, and during the summer months the parties would share 50/50 physical custody.

Paternal Aunt testified that she was instrumental in bringing the entire family to the United States from Syria after she and her siblings were orphaned. Paternal Aunt explained that the six siblings all live close together, have Sunday dinners every week, and help take care of the Children on a daily basis. She testified that the Children are "pieces of our heart." N.T. Hearing, 6/17/21, at 117. Finally, she testified that she never saw Father lay a hand

on Mother and he would never do that because he was raised to respect women.

Father's teenage niece testified that she helps Father watch the Children, that she sees the Children every day, that the whole family cares for the kids as though they are their own children, and that Father is a great dad and his kids are his top priority. She also testified that the Children appear to be somber since they have moved part time to Erie.

On August 12, 2021, the trial court filed a Memorandum which analyzed the 23 Pa.C.S. § 5328(a) custody factors and Section 5337(h) relocation factors to determine what disposition was in the Children's best interest. The trial court simultaneously entered an order that denied Mother's request to relocate, awarded shared legal custody to the parties, and awarded physical custody to the parties conditioned on where Mother chose to live.

Specifically, if Mother chose to live outside of Father's school district, the court awarded Father primary physical custody and Mother partial physical custody of Children on the first, second, and forth weekend of every month during the school year. If Mother chose to live inside of Father's school district, the court awarded the parties shared physical custody of the Children on a week-on, week-off schedule. Regardless of where Mother chose to live, the court awarded the parties shared physical custody during the summer months.

Mother timely appealed and filed a contemporaneous Pa.R.A.P. 1925(b) Statement pursuant to Rule 1925(a)(2)(i). The trial court filed a responsive Rule 1925(a) Opinion.

Mother raises the following issues for our review:

I.      Does the trial court commit an error, when it drastically changes physical custody, but it fails to consider the best interests of the [C]hildren?

II.     Does the trial court abuse its discretion, when it fails to consider the domestic violence and emotional abuse of one parent against the other in its Final Order of Court?

III.    Does the trial court abuse its discretion, when it fails to give appropriate weight and consideration to a parent's reason for relocation?

IV.     Does the trial court commit an abuse of discretion, when it fails to consider testimony by a relocating parent that the relocation will greatly enhance the lives of the minor children?

V.      Does the trial court commit an abuse of discretion, when it fails to consider the long-term effects that providing a negligent, uninvolved parent with primary custody will have upon the minor children academically, socially and developmentally?

Mother's Br. at 5-6.

"We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This Court must accept the findings of the trial court that the evidence supports. *Id*. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the

witnesses." ***K.T. v. L.S.***, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." ***S.W.D.***, 96 A.3d at 401. ***See also*** 23 Pa.C.S. § 5323(a) and (d). The Custody Act requires a trial court to consider the Section 5328(a) custody factors when "ordering any form of custody," and further requires the court to give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a). Likewise, a trial court must consider ten relocation factors when deciding a petition for relocation, "giving weighted consideration to those factors which affect the safety of the child." ***Id.*** at § 5337(h). The party proposing a child's relocation has the burden of establishing that the relocation will serve the best interest of the child. ***Id.*** at § 5337(i)(1). Each party has the burden of establishing the integrity of that party's own motives in either seeking the relocation or opposing the relocation. ***Id.*** at § 5337(i)(2).

When reviewing child custody matters and the trial court's consideration of the Section 5328(a) custody and Section 5337(h) relocation factors, our paramount concern is the best interests of the child. ***See Saintz***, 902 A.2d at 512 (explaining that this Court's "paramount concern and the polestar of our analysis" in custody cases is the best interests of the child). "The best-

- 8 -

interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***D.K.D. v. A.L.C.***, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted).

In her first issue, Mother avers that the trial court failed to consider the best interest of the Children when it "drastically" changed physical custody of the Children. Rule 1925(b) Statement, 8/31/21, at 2 (unpaginated) ¶ 1; Mother's Br. at 6. In its 1925(a) Opinion, the trial court found this issue waived because "Mother's allegation set forth in Issue One is too vague and requires this [c]ourt to guess what she is actually appealing." Trial Ct. Op., dated 9/21/21, at 5.

It is an appellant's responsibility to precisely identify any purported errors. ***Schenk v. Schenk***, 880 A.2d 633, 639 (Pa. Super. 2005). "When a court has to guess what issues defendant is appealing, that is not enough for meaningful review." ***Commonwealth v. Dowling***, 778 A.2d 683, 686 (Pa. Super. 2001). "In other words, a [Rule 1925(b) c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." ***Id.*** at 686-87. When a trial court fails to address an issue because the appellant's Rule 1925(b) concise statement is not specific enough for the trial court to identify and address the issue that the appellant wishes to raise on appeal, waiver is

appropriate. *Id.* at 687. The trial court concluded this issue was waived because it was too vague, and we agree.

In her second issue, Mother avers that the trial court abused its discretion when it denied Mother's relocation petition by failing to consider Father's abuse against Mother. Mother's Br. at 19. Mother argues that the Custody Act requires the trial court to give weighted consideration to custody and relocation factors which affect the safety of the Children, and the trial court erred when it dismissed factors that addressed Mother and the Children's "safety as 'inapplicable,' despite Mother providing extensive testimony about an incident of abuse." *Id.* at 20.

In its Memorandum, the court reviewed and analyzed all of the custody and relocation factors, including the "present and past abuse committed by a party" and "whether there is a continued risk of harm" to the Children set forth in Section 5328(a)(2) and Section 5337(h)(9), and found both of those factors to be inapplicable. Memorandum, filed 8/12/21, at 4, 11 (unpaginated). In its analysis, the trial court emphasized that neither party filed protection from abuse petitions and child protective services did not get involved with this family. *Id.* at 4. The trial court considered the evidence presented by both parties and found "the April 2020 altercation is an isolated incident of mutual combat" that was "inapplicable" to its best interests determination because neither party presented credible testimony of abuse. *Id.* at 4-5. Despite Mother's characterization that she provided "extensive testimony" about the

April 2020 incident of alleged "abuse" by Father, the trial court simply did not find the testimony to be credible and we discern no abuse of discretion in the court's conclusion.

In her next two issues, Mother avers that the trial court failed to consider certain evidence. Specifically, Mother argues that the trial court failed to consider her non-economic reasons for relocation, namely an escape from an abusive marriage. Mother's Br. at 23. Mother also argues that the trial court failed to consider her testimony that relocation would greatly enhance the lives of the Children by improving their living environment and intellectual development. *Id.* at 24-25.

Mother does not challenge the court's application of the relocation factors; rather, she challenges the weight the court gave to the evidence. Our review of the record reveals that the trial court engaged in an analysis of the Section 5337 relocation factors and made specific findings regarding each factor, which the record supports. *See* Memorandum at 11-15 (unpaginated). The trial court found one factor to be in favor of relocation and found that "relocation would provide Mother with a significant emotional benefit due to her proximity to family members." *Id.* at 14. The trial court found that the remaining nine factors were either opposed to relocation, neutral, or inapplicable. *See id.* at 11-15. Based on its consideration and analysis of the relocation factors, the trial court concluded that relocation was not in the Children's best interest at this time. Our review of the record supports the

trial court's findings. We decline to usurp the trial court's credibility determinations or reweigh the evidence. As such, we find no abuse of discretion.

In her fifth and final issue, Mother avers that the trial court abused its discretion when it failed to consider the long-term effects on the Children's academic, social, and developmental well-being which will result from providing a "negligent, uninvolved parent" with primary custody. Mother's Br. at 25. Mother acknowledges that considering the "long-term effects" of a custody determination is not explicitly required by the Custody Act and cites no authority to support her position. *Id.* at 26. However, according to Mother, public policy dictates that a custody determination should be "sufficient to cater to [the Children's] long-term interest and, therefore, stability." *Id.*

Mother's argument fails for several reasons. The trial court did not find Mother's testimony to be credible that Father was an uninvolved parent, and the custody award is conditioned on whether Mother chooses to live in Father's school district. Most notably, Mother provides no authority to support her argument.

As stated above, the trial court considered and analyzed all of the Section 5328(a) custody factors to determine which custody arrangement was in the Children's best interest, and the record supports the trial court's findings. The trial court opined:

> First, Father is not a negligent, uninvolved parent and this [c]ourt only awarded him with primary physical custody during the school

year in the event that Mother does not return to the jurisdiction; if Mother chooses to return to the jurisdiction, the parties will share physical custody on a week-on/week-off basis. Second, this [c]ourt is of the opinion that the sixteen custody factors set forth in 23 Pa.C.S. 5328(a), which are thoroughly outlined in this [c]ourt's Order, adequately address Mother's concerns for the [C]hildren's academic, social, and developmental well-being. Accordingly, this issue is without merit and should be dismissed.

Trial Ct. Op. at 8. We agree and find no abuse of discretion.

In conclusion, the trial court did not abuse its discretion when it denied Mother's relocation petition and awarded custody to the parties conditioned on whether Mother resides in Father's school district.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2022

- 13 -