J-S25001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| OLUSEUN WERT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA WERT | : | No. 174 EDA 2024 |

Appeal from the Order Entered January 2, 2024
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2023-FC-0388

BEFORE:  DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.:                **FILED SEPTEMBER 24, 2024**

Appellant, Olusean Wert ("Mother"), appeals from the January 2, 2024 order entered in the Lehigh County Court of Common Pleas that awarded Mother and Appellee, Joshua Wert ("Father"), shared legal and physical custody of the parties' children, seven-year-old L.W. and five-year-old L.W. (collectively, "Children").  Upon review, we affirm.

A detailed recitation of the factual and procedural history is unnecessary to our disposition.  Briefly, on April 12, 2023, after approximately ten years of marriage, Mother filed a complaint in divorce and custody, requesting shared legal and primary physical custody of Children.  On June 1, 2023, after a custody conference, the trial court entered an interim custody order awarding the parties shared legal and physical custody of Children pending a full custody trial.  On August 10, 2023, December 13, 2023, and December 14, 2023, the court held a custody trial.  Mother presented testimony from Children's

babysitter and herself. Father presented testimony from his coworker/friend, his mother, his mother's paramour, and himself. On January 2, 2024, after considering the 23 Pa.C.S. § 5328 custody factors, the trial court entered an order awarding shared legal and physical custody to the parties. Specifically, the court ordered the parties to follow a "2-2-5-5" rotating custody schedule where Mother and Father received an equal amount of weekday and weekend time with Children.

Mother timely appealed.[1] Both Mother and the trial court complied with Pa.R.A.P. 1925.

Notably, in her brief to this Court, Mother fails to include a statement of the questions involved as required by Pa.R.A.P. 2116. However, in her Rule 1925(b) statement as well as her argument section, Mother enumerates the following issues for our review:

1. The trial court erred when it denied Mother's petition for primary custody.

2. The trial court erred when it did not allow videos from [Mother]'s home to be entered into evidence.

---

[1] On January 12, 2024, Mother filed a notice of appeal purporting to challenge two separate orders in two separate cases. Specifically, Mother challenged both a December 13, 2023 order denying a protection from abuse petition as well as a January 2, 2024 custody order. On January 29, 2024, this Court entered a rule to show cause directing Mother to respond as to the order being appealed. On February 7, 2024, Mother filed a response to the rule to show cause, and on February 20, 2024, Mother filed an amended notice of appeal solely challenging the January 2, 2024 custody order.

3. The trial court erred when it did not allow videos from [Mother]'s marital home to be admitted into day two of trial, but allowed them in day one of trial.

Mother's Br. at 7, 11, 12 (unpaginated).

## A.

This Court reviews a custody determination for an abuse of discretion, and our scope of review is broad. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This Court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake. *J.C. v. K.C.*, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

When reviewing child custody matters, our "paramount concern and the polestar of our analysis" is the best interests of the child. *Saintz*, 902 A.2d at 512 (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the

child's physical, intellectual, moral, and spiritual well-being." **D.K.D. v. A.L.C.**, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." **S.C.B. v. J.S.B.**, 218 A.3d 905, 916 (Pa. Super. 2019).

The trial court "shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors . . . which affect the safety of the child," including the seventeen factors mandated by the Custody Act. 23 Pa.C.S. § 5328(a). The court must "delineate the reasons for its decision[.]" **Id.** at § 5323(d). Finally, in any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent and no preference based upon gender. 23 Pa.C.S. §§ 5327(a) and 5328(b).

Furthermore, our review of a trial court's evidentiary rulings is well-established. "The admissibility of evidence is a matter solely within the discretion of the trial court. This Court will reverse an evidentiary ruling only where a clear abuse of discretion occurs." **Commonwealth v. Johnson**, 638 A.2d 940, 942 (1994) (citation omitted). "An abuse of discretion will not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly

erroneous." ***Commonwealth v. Lehman***, 275 A.3d 513, 518–19 (Pa. Super.) (citation omitted), *appeal denied,* 286 A.3d 213 (Pa. 2022).

**B.**

As an initial matter, Mother's argument section is substantially underdeveloped. To support her claims, Mother merely provides boilerplate law regarding child custody proceedings and the admission of video recordings into evidence. Under each argument heading, Mother boldly states: "[t]he undersigned is unable to complete the factual basis for this part of the argument, as she is still missing a transcript[.]"[2] Mother's Br. at 10, 12, 13-14 (unpaginated). As such, Mother fails to apply the facts of this case to the law that she provides to assert any actual trial court error.

It is axiomatic that the argument portion of an appellate brief must be developed with citation to the record and relevant authority. Pa.R.A.P 2119(a)-(c). "The Rules of Appellate Procedure [] state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Commonwealth v. Martz***, 232 A.3d 801, 811 (Pa. Super. 2020) (citation omitted)***; see*** Pa.R.A.P. 2111 (listing briefing requirements for appellate briefs) and Pa.R.A.P. 2119 (listing argument

_____

[2] Mother faults a missing transcript for her inability to provide any substantive legal analysis. Our review of the docket reveals that Mother initially failed to order the December 14, 2023 transcript in violation of Pa.R.A.P. 1911 and subsequently motioned this Court for assistance with the missing transcript. On April 2, 2024, upon order from this Court, the lower court supplemented the certified record with the December 14, 2023 notes of testimony. Thereafter, Mother failed to motion this Court to supplement her brief.

requirements for appellate briefs).  "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review[,] a Court will not consider the merits thereof."  **Branch Banking and Trust v. Gesiorski**, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation omitted).  It is not the role of this Court to develop an appellant's argument where the brief provides mere cursory legal discussion.  **Commonwealth v. Johnson**, 985 A.2d 915, 925 (Pa. 2009).  This Court will not act as counsel.  **In re R.D.**, 44 A.3d 657, 674 (Pa. Super. 2012).

Because Mother fails to apply the law to the facts of this case in a meaningful and coherent manner with citation to the record as required by our Rules of Appellate Procedure and case law, we find her issues to be waived.

## C.

Even if this court did not find Mother's issues to be waived, we discern no trial court error.  After careful review of the parties' briefs, the applicable law, and the trial court's well-reasoned and thorough opinion, we conclude that there is no merit to the issues that Mother has raised on appeal.  The trial court engaged in an analysis of each of the Section 5328 custody factors and made specific findings regarding each factor, which the record supports.  Tr. Ct. Op., 4/11/24, at 1-9.  The trial court also addressed Mother's evidentiary challenges and explained why each video marked at trial was included or precluded from evidence, despite Mother not identifying the specific videos to which she was referring.  **Id.** at 12.  Accordingly, even if we did not find waiver we would affirm on the basis of the trial court's April 11, 2024 opinion.  **Id.** at

1-12 (considering all of the Section 5328 custody factors and finding that it was in Children's best interest to award shared legal and physical custody to parties and concluding that the trial court did not abuse its discretion when it precluded video evidence).

All parties are instructed to attach a redacted copy of the April 11, 2024 trial court opinion to all future filings.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/24/2024

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY,
PENNSYLVANIA
CIVIL DIVISION

OLUSEUN WERT,                    )  NO. 2023-FC-0388
                    Plaintiff   )        174 EDA 2024
        vs                       )
JOSHUA WERT,                     )
                    Defendant   )

### AMENDED STATEMENT OF REASONS PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

This is an appeal from the Order of January 2, 2024 regarding custody of the parties' children. The undersigned enters the following statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

Specifically, on January 12, 2024, Appellant filed a Notice of Appeal bearing the docket numbers of two separate cases, namely the Protection From Abuse (PFA) case at docket number 2023-PF-1492 and the Custody case at docket number 2023-FC-0388. In the Notice of Appeal filed to each docket number, Appellant indicated appealing two separate orders in the two separate cases. Each order was attached to the Notice of Appeal. The Concise Statement of Errors Pursuant to Pa.R.A.P. 1925 raised errors in both the PFA and Custody cases. By Order of February 9, 2024, the Superior Court permitted Appellant to file an Amended Notice of Appeal. The Amended Notice of Appeal was filed on February 20, 2024. In the Amended Concise Statement of Errors Pursuant to Pa.R.A.P. 1925, Appellant asserts the following:

1.  Did the Court err when they denied Mother's petition for primary custody?

2.  Did the Court err when they did not allow the videos of grandmother at mother's home to be presented as evidence?

3.  Did the Court err when they allowed some of the videos of father outside his home but not others?

Primary Custody Issue

The reasons for the Order of January 2, 2024 appear in the Memorandum Opinion filed along with the Order of January 2, 2024 and is reproduced herein in its entirety as follows:

MEMORANDUM OPINION

*This Memorandum Opinion is filed pursuant to 23 Pa.C.S.A. Section 5328. The parties are directed that they shall not copy or reproduce the Memorandum Opinion. They shall not show the Memorandum Opinion to the children or permit others to show it to the children. They shall not publish the Memorandum Opinion or any part of it on social media or the internet or use the Memorandum Opinion in any other way other than in meeting their own responsibilities as a parent. Failure to follow this directive may result in a finding of contempt.*

Before the court were the following:

1)  Custody Count of Divorce Complaint filed by Plaintiff on April 12, 2023

2)  Counterclaim for Custody filed by Defendant on May 3, 2023; and

3)  Petition for Contempt filed by Plaintiff on December 8, 2023[1]

---

[1] The Petition for Contempt was heard on the second day of Trial. The Order regarding that Petition is filed separately from the Order regarding the Custody Count of the Divorce Complaint and the Counterclaim for Custody.

2

Trial testimony was taken on August 10, 2023, December 13, 2023 and December 14, 2023.

The children at issue in this matter are L‚ W‚ born on August 11, 2017, and L‚ W‚, born May 24, 2019.

Plaintiff (hereinafter "Mother") appeared at Trial represented first by Attorney Mark Stanziola and then by Attorney Alexandria Crouthamel. Defendant (hereinafter "Father") appeared at Trial represented by Attorney Donald Spry.

At the June 1, 2023 Custody Conference, the parties reached an Interim Order which was dated and filed June 8, 2023.

The primary concern in any custody case is the best interest of the children. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the children's physical, intellectual, moral, and spiritual well-being. *Saintz v. Rinker, 2006 Pa.Super, 129, 902 A.2d 509, 512 (2006).*

Section 5323(d) of Title 23 provides that the trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa. C.S.A. Section 5323(d). It is mandatory for the trial court to determine the best interest of the children by considering all relevant factors detailed in 23 Pa.C.S.A. Section 5328.

3

Although a Protection From Abuse Petition was filed by Mother against Father and another one against the Paternal Grandmother, both Petitions were denied by the court. The court found no evidence of any physical abuse or risk of harm to these children in this case.[2]

There is no issue of drug or alcohol abuse by either parent.[3] Neither parent has any diagnosed mental or physical condition that would adversely impact their respective care of the children.[4]

The parties live in close proximity to each other. They both live in the Southern Lehigh School District and in the same elementary school zone.[5]

The children were not offered as witnesses in this case. As such, no determination can be made regarding a well-reasoned preference of the children.[6]

Each party has a support network to assist them with the care and needs of the children. While Father's mother is one of them, the remaining people on both sides who offer support are not blood related. No matter, the fact is that the parties have a good network of people around them who love and care for the children.[7]

The mutual babysitter used by both parents at various different times testified credibly that both parties are amazing parents to the children. This speaks volumes

---

[2] 23 Pa.C.S.A. § 5328(2).
[3] 23 Pa.C.S.A. §5328(14).
[4] 23 Pa.C.S.A. §5328(15).
[5] 23 Pa.C.S.A. §5328(11).
[6] 23 Pa.C.S.A. §5328(7).
[7] 23 Pa.C.S.A. §5328(5).

4

with regard to a number of the custody factors. This, as well as the answers provided by each party in their Statement of Facts and their testimony in court, supports a finding that these parties are equally matched as superlative parents. The court finds that they are both likely to encourage and permit frequent and continuing contact between the children and the other party. Each parent recognizes the importance of the other parent in the children's lives.[8] Each party performs an abundance of parental duties for the children. Neither one would be seen to have more ability than the other in this regard.[9] The children want for nothing in the homes of each parent. They are given much love from each parent. The parents have placed the needs of the children in the forefront of their decisions. The children's lives have stayed as stable as possible during this transition of separation of the family. The parties live close to each other and have maintained the same people in the lives of the children as were present prior to the separation. They have both equally looked to maintain stability and continuity for their children.[10]

The parties are exemplary in their emphasis on attending to the children's daily physical, emotional, developmental, educational and special needs.[11] They manage their work schedules so that they are available to the children and make

---

[8] 23 Pa.C.S.A. §5328(1).
[9] 23 Pa.C.S.A. §5328(3).
[10] 23 Pa.C.S.A. §5328(4).
[11] 23 Pa.C.S.A. §5328(10).

5

appropriate child care arrangements.[12] They each work with the children and interact with them so that all of their daily needs are met. They are each equally able to maintain a loving, stable, consistent and nurturing relationship with the children.[13] Neither party presented evidence or testimony for the court to deduce that these children have been adversely impacted by the parties or by anyone for that matter. The children perform well in school. They have a good sibling relationship.[14] The only evidence presented to illustrate adversity to the children was seen during the custodial transitions. This, the court views as a statement by the children that they love each parent dearly and are saddened at the moment of transition out of one parent's home. There is nothing abnormal about that response from a loving child. Nor is that something that implicates a lack of love for the other parent. It simply indicates to the court that there is an express need to create a custody schedule that allows for less transitions occurring at the respective homes of the parties.

One could look at this family and wonder just why it is that they are before the court. They started their relationship knowing that they may have some roadblocks and hurdles to conquer. They took those on and brought two children into the world knowing that as a united front they could help their children overcome

---

[12] 23 Pa.C.S.A. §5328(12).
[13] 23 Pa.C.S.A. §5328(9).
[14] 23 Pa.C.S.A. §5328(6).

6

any obstacle. They even began their separation with the same commitment to helping their children adjust to the separation without adverse impact. They developed a custodial schedule to allow the children equal access to the love of both parents. Somewhere along the way, however, they each started to stray away from the importance of their unity as the parents of these children. They each allowed outside influences to change their mutual regard for the other. The court does not believe that either parent has an overt intent to turn the children against the other parent.[15] However, this new-found feud between them is likely to transcend into a situation where the children will grow distant from both parents. This cannot be permitted to continue. The parents have worked since the births of their children to provide them with a life free from adversity. To allow that to impact their parenting now would be a most unfortunate conclusion to the well-rounded young children that they have been raising.

The parties have the ability and the capability to reduce their conflict between them. They need to work together to step back to a time when they held each other in a higher regard as it pertained to themselves as parents. The court is confident that with some assistance they can maintain a minimal level of conflict between them.[16]

---

[15] 23 Pa.C.S.A. §5328(8).
[16] 23 Pa.C.S.A. §5328(13).

7

However, the focus issue in this case centers around the fact that each parent believes that the views of the other will impact negatively on the children's feelings toward that parent. Mother believes that Father's family has a prejudice toward Mother. Father believes that Mother's feelings regarding this perceived prejudice will amount to a negative impact on the children's views of Father.

Mother filed a Petition for Contempt against Father regarding his actions in allowing his mother to denigrate Mother in the presence of the children. While the court has held Father in contempt for his actions and part in the events that took place, the court firmly believes that the Father's actions at this time are the result of the watershed of court proceedings pertaining to this family. At this time, the parties are both fortunate that the children seem more interested in their games than they do in listening to or understanding the discussions between the adults. Warning is relayed to all of the parties that this may be the case for only a brief period. Now is the time for the parties to unite once again and work together to make sure that no one treats these children badly.

Father testified realistically when asked about the crass tone of his mother's life partner. Father stated that people say ignorant things all the time. Whether paternal grandmother and her life partner are racist or simply ignorant, the fact is that they are not the only people with such demeanors that these children will encounter in their lives. It is, however, incumbent upon Father to stand up for his

8

children and combat the ignorance that he observes and not let that perpetuate to the negative impact of the children.

At this time, it would be cruel to eliminate the people in the children's lives that they have known since birth. The children truly love and enjoy the company of all these people. However, this would be an easy thing for the court to do in the event this ignorance is not ceased. For now, the court places the onus on Father to ensure that the children are not adversely impacted by the people with whom Father wishes to associate.

For the above stated reasons and after consideration of the statutory factors in light of the testimony and evidence presented, the court concludes that the best interests of the children require shared legal custody and shared physical custody along with other salient provisions as set forth in the Final Custody Order.

Video Evidence Issues

The trial court's rulings as to evidentiary questions are controlled by the sound discretion of the trial court. Those rulings will not be disturbed unless a clear abuse of discretion is shown. *Sutherland v. Monongahela Valley Hosp.*, 2004 Pa. Super. 245, 856 A.2d 55, 59 (2004). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

9

*Sutherland*, 56 A.2d at 59. For an errant ruling on evidence to merit a new trial, "it must have been harmful or prejudicial to the complaining party. *Jacobs v. Chatwani*, 922 A.2d 950, 966 (Pa. Super. 2007). "Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment." *Yacoub v. Lehigh Valley Medical Assoc., P.C.*, 805 A.2d 579, 585 (Pa. Super. 2002), *quoting Detterline v. D'Ambrosio's Dodge, Inc.*, 763 A.2d 935, 938 (Pa. Super. 2000) and *Foflygen v. Allegheny General Hosp.*, 723 A.2d 705, 708 (Pa. Super. 1999), *appeal denied* 740 A.2d 233 (Pa. 1999).

During the testimony presented on December 13, 2023[17], Appellant had two videos with audio. One was from October 24, 2023 and illustrated Father and paternal grandmother speaking outside of Father's home. The court permitted this video with audio to be played. The second one was from November 27, 2023 and illustrated Mother and paternal grandmother speaking outside of Mother's home. Both videos with audio were procured from the doorbell cameras at the respective residences. The court initially did not permit the showing of the November 27 2023 video with audio. However, during the proceedings, counsel for the paternal

---

[17] During the PFA hearing on December 13, 2023 which took place immediately before the second day of the custody trial, the court indicated on the record that the record from the PFA cases would be incorporated into the custody record. The two videos were presented during the PFA hearing.

10

grandmother, who was also counsel for Father, withdrew any objection to the video with audio and it was ultimately played to the court.

During the custody case testimony presented on December 13, 2023, Appellant identified a video with audio from August 7, 2023 which illustrated Father and paternal grandmother speaking outside of Father's home. This was also procured from the doorbell camera outside of Father's residence. This video was seen and considered by the court as it was marked as Exhibit P-2 and admitted into evidence.

During the custody case testimony presented on December 14, 2023, the first video with audio discussed pertained to an incident which had occurred at Father's home when the children locked the paternal grandmother out of the house. The paternal grandmother had testified credibly with regard to her panic reaction when the boys had locker her out of the residence. The paternal grandmother never denied making a derogatory statement about the boys at that time. The point was aptly made by Appellant's counsel and there was no reason to bolster the statement with the playing of the video and audio of that event.

The next video with audio discussed during the custody case testimony presented on December 14, 2023 pertained to the paternal grandmother speaking to Father outside of Father's home around Halloween time 2023 depicting the paternal grandmother asking the children things about what they were doing at Mother's home. The paternal grandmother specifically agreed and acknowledged asking the

11

boys several questions about their activities at Mother's home. Another reference was made to a statement by paternal grandmother that Mother was trying to buy the love of the children. Here again, the paternal grandmother acknowledged making the statement. Again, the points were aptly made by Appellant's counsel and completely considered by the court. At trial, this video, which the court believes may have actually been two separate videos being discussed, was the subject of the cross examination of the paternal grandmother. Appellant's counsel never marked or asked to play this video during the cross examination. It was not until recross examination that Appellant's counsel asked to play this video.

While one of the errors asserted by Appellant's counsel states that the court did not allow videos of paternal grandmother at Mother's home. The court is unable to locate in the record any such time when a video at Mother's home was not ultimately played and considered by the court in the custody case.

For the foregoing reasons, this court respectfully requests that the Order of January 2, 2024 be affirmed.

BY THE COURT:

Dated: April 11, 2024

_____
MELISSA T. PAVLACK, J.

12