J-S39003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH C. KELSCH II | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MELISSA L. KELSCH | : | |
| | : | |
| Appellant | : | No. 819 WDA 2024 |

Appeal from the Order Entered June 18, 2024
In the Court of Common Pleas of Clarion County Civil Division at No(s):
1038 CD 2020

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED:  November 6, 2024**

Appellant, Melissa Kelsch ("Mother"), appeals from the June 18, 2024[1] order entered in the Clarion County Court of Common Pleas denying her petition to modify custody and ordering Appellee, Joseph Kelsch ("Father"), to maintain primary physical custody of their 12-year-old child, J.C.K.[2] ("Child"). Mother asserts that the trial court abused its discretion because it failed to consider the results of the custody evaluation, Child's preference, and Child's relationship with his sister.  Upon careful review, we affirm.

**A.**

We glean the relevant factual and procedural history from the trial court opinion and the certified record.  Mother and Father are parents of Child.  Since

_____

[1] The court issued the order on June 14, 2024, but it was docketed and served on June 18, 2024.

[2] Child was born in April of 2012.

their divorce in 2020, they have been involved in a contentious custody dispute, which has included numerous petitions to modify custody and for contempt. Shortly after their divorce, Mother moved from the North Clarion School District, where the family had resided for Child's entire life, to the Butler Area School District, approximately a one-hour drive away from Father's home. On March 16, 2022, the court awarded Father primary physical custody of Child and Mother partial physical custody every other weekend during the school year and every other week during summers. The parties also have a 17-year-old child, A.M.K. ("Sister"), who resides with Mother and does not have a relationship with Father.

On January 17, 2023, Mother filed a petition to modify custody seeking primary custody of Child. As a result, the court ordered the parties to participate in a custody evaluation conducted by Dr. Carolyn Menta, which the parties completed in May 2023. The court also appointed Zachary Shekell, Esq., guardian *ad litem* to advocate for Child's position on primary custody.[3]

The parties proceeded to trial on March 5, 2024. At trial, several witnesses testified, including Child, Dr. Menta, Child's school principal, and Father. Relevantly, when Attorney Shekell asked Child if he was happy with the custody arrangement, he testified that "I think something should change." N.T. Trial, 3/5/24, at 10. Child then stated that he wanted "to try [] out"

---

[3] The court noted that the "parties agreed that [Child] would benefit from representation by independent legal counsel due to his difficulties in the past in expressing himself regarding his position on custody." Trial Ct. Op., 6/18/24, at 2 (unpaginated).

living with Mother and attending school in Butler "for at least two months" during the next school year and return to North Clarion if he did not like it.[4] *Id.* at 11. He further explained that Sister had encouraged him to try attending school in Butler.

Dr. Menta then testified about the court-ordered custody evaluation she conducted. Relevantly, she testified that Father was more concerned for himself, while Mother was more concerned for Child. She explained that Child was "very anxious[,]" "depressed," and "had a hard time speaking up for himself." *Id.* at 36. Dr. Menta also testified that Child's school records indicated that his grades were worsening. *Id.* at 36. She noted Father was "not nurturing" when interacting with Child and that Child was more "relaxed" with Mother and Sister and more affectionate towards Mother than Father. *Id.* at 37, 39-40, 43. Dr. Menta concluded that Child was not "thriving" with Father and noted that he wanted a "trial period" to attend school in Butler. *Id.* at 42-43. Her "primary reason" for recommending that the court award primary physical custody to Mother "is that she presented as much more nurturing towards" Child and could better meet his emotional needs. *Id.* at 45.

On cross-examination by Father's counsel, Dr. Menta stated that she was unaware of the details of prior contempt proceedings against Mother. She

---

[4] Attorney Shekell informed the court that Child's testimony was consistent with what he had told Attorney Shekell during their meetings. N.T. Trial at 69.

acknowledged that she was unaware that Child's grades had improved, but that that would not change her opinion that Mother should have primary physical custody. She also stated that Child was anxious about changing schools. Lastly, in response to the court's questioning, she explained that her report was based on a "snapshot" of the parties and their relationship as it was when she conducted the evaluation, between February and May 2023. ***Id.*** at 68. She stated that she was "aware" of the history of the case, but it was not her primary focus in the evaluation. ***Id.***

Next, Keith Hastings, Child's school principal, testified that Child has "grades in the low 90s, high 80s," and has a small group of friends. ***Id.*** at 102-103. Finally, Father testified that Mother has called the police "several" times to perform welfare checks on him and Child when Father did not answer her calls in a "short amount of time." ***Id.*** at 121-122.

On June 18, 2024, the court ordered that Father would maintain primary custody but granted Mother partial physical custody three out of every four weekends during the school year and every other week during the summer. Custody Order, 6/18/24, at ¶2(a)-(b).

**B.**

Mother timely appealed and filed a contemporaneous concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court relied on its June 18, 2024, Order and Opinion in lieu of a Rule 1925(a) opinion.

Mother raises one issue for our review:

Did the [t]rial [c]ourt abuse its discretion by failing to grant [M]other primary physical custody of [Child]?

Mother's Br. at 5.

**C.**

This Court reviews a custody determination for "an abuse of discretion, and our scope of review is broad." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." ***In re K.D.***, 144 A.3d 145, 151 (Pa. Super. 2016). Furthermore, we must accept the findings of the trial court that the evidence supports. ***S.W.D.***, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." ***K.T. v. L.S.***, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

When reviewing child custody matters, our "paramount concern and the polestar of our analysis" is the best interests of the child. ***Id.*** (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***D.K.D. v. A.L.C.***, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates

that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." *S.C.B. v. J.S.B.*, 218 A.3d 905, 916 (Pa. Super. 2019).

The trial court "shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors. . .which affect the safety of the child," including the following factors mandated by the Custody Act:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a) (2014) (amended 2024).[5]

The court must "delineate the reasons for its decision[.]" *Id.* at § 5323(d). Finally, in any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent and no preference based upon gender. *Id.* at §§ 5327(a), 5328(b).

_____

[5] The legislature amended Section 5328(a), effective August 13, 2024. References to Section 5328(a) in this Memorandum refer to the prior version of the statute that was in effect at the time the trial court opinion was issued. The amended version includes, *inter alia*, a substantive change to factor 1, which now reads, "[w]hich party is more likely to ensure the safety of the child." 23 Pa.C.S. § 5328(a)(1); Act of April 15, 2024, P.L. 24, No. 8, §§ 2-3.

\*

Mother maintains that the court abused its discretion when it ordered Father to maintain primary physical custody of Child by asserting that it disregarded (1) the results of Dr. Menta's "extensive" custody evaluation which supported Dr. Menta's opinion that Mother should have primary custody of Child; (2) Child's preference, which he had consistently expressed, to live with Mother and "go to school at Butler, try it out[;]" and (3) Child's close relationship with Sister. Mother's Br. at 11, 15, 18-20. Essentially, Mother challenges the weight the court assigned to factors 6, 7, and 16.[6]

The trial court addressed each of the Section 5328 custody factors and found that most of them did not favor either party.[7] **See** Trial Ct. Op., 6/18/24, at 2-7 (unpaginated). However, the court determined that factors 1, 4, and 8 weighed in Father's favor, while factor 6 weighed in Mother's favor. **Id.** Specifically, the court determined that factor 4 favored Father because Child, who was about to start 7th grade, had attended North Clarion schools since kindergarten, has friends at school and through his wrestling team, and is seeing a therapist near Father's home. **Id.** at 2. Regarding factor 1 and

_____

[6] Mother also claims that the court abused its discretion in failing to award her additional custodial time during the summers. Mother's Br. at 20. However, Mother has waived this claim because she has failed to include it in her Statement of Questions Presented. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

[7] In discussing factor 3 and factor 10, the court noted that Father had taken a more active role in providing for Child's needs as the primary parent but concluded that both parties were capable of doing so. Trial Ct. Op. at 3, 6.

factor 8, the court noted that Mother has a "history of ignoring the custodial schedule" which would "likely" continue and had requested unfounded welfare checks on Father and Child multiple times. *Id.* at 2, 5. The court determined that factor 6 favored Mother because Child has a "close relationship" with Sister but only sees her when he is with Mother. *Id.* at 4.

The court found that Child's preferences in factor 7 did not favor Mother because, "while [Child] has expressed a willingness to try" attending school in Butler and wished to spend more time with Mother and Sister, "he did not express a desire to live primarily with [Mother]" and "is apprehensive about changing schools[.]" *Id.* at 4-5. Finally, in addressing other relevant factors in factor 16, the court found Dr. Menta's custody evaluation not credible, finding that she "was misinformed or uninformed" regarding Mother's past attempts to interfere with Father's custodial time by calling the police for welfare checks, Mother's history of failing to comply with custody orders, and the improvement in Child's grades. *Id.* at 7-8.

Ultimately, the court found that Child is doing well with Father—he has matured, as evidenced by his demeanor in court, and his grades and mental health are improving—and that moving would be disruptive. *Id.* at 7. The court also found that Child was "willing to try" attending school in Butler to please Mother. *Id.* The court concluded that, "[w]hen taking all of the [custody] factors into consideration, [there was] no compelling reason to change the primary custody of [Child]." *Id.*

Following our review, we conclude that the trial court engaged in an analysis of all of the Section 5328 custody factors, including Child's stated preference and his relationship with Sister, and made specific findings regarding each factor. The court assigned greater weight to the testimony adduced at the hearing and its observations of Child in court than it gave to Child's stated preference and his relationship with Sister, and it did not credit Dr. Menta's custody evaluation. *Id.* at 8. Accordingly, it determined that, while Child was willing to try living in Butler, he did not "have a strong desire to move" and that it was in his best interests to remain with Father. *Id.* While the court found that it was in Child's best interests to remain with Father, it awarded Mother an additional weekend each month so that Child may spend more time with her and Sister. *Id.*

The record supports the trial court's findings, and its order is not "manifestly unreasonable." *Saintz*, 902 A.2d at 512. Mother's arguments urge us to reweigh the evidence and reach our own credibility determinations. This we may not do. *K.T.*, 144 A.3d at 151. Accordingly, Mother has failed to persuade this Court that the trial court abused its discretion when it increased her time with Child while concluding that it was in Child's best interests to remain in Father's primary physical custody. We, thus, affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/6/2024