J-S18003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAMON JOHNSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHELSEA ASH | : | No. 132 WDA 2025 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CASEY SPONSLER | : | |

Appeal from the Order Dated January 13, 2025
In the Court of Common Pleas of Bedford County Civil Division at No(s):
No. 174-2022

BEFORE:   DUBOW, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                **FILED: DECEMBER 18, 2025**

Appellant, Damon Johnson ("Father"), appeals from the January 13, 2025 custody order that denied his petition to modify custody and continued to award Father shared legal and physical custody of six-year-old R.S. ("Child").  Upon review, we affirm.

The relevant factual and procedural history is as follows.  Chelsea Ash ("Mother") and Father are parents to Child.  Father was aware that Mother was pregnant with Child and initially believed he was Child's biological father until Father and Mother got into an argument and Mother lied and informed

_____

[*] Former Justice specially assigned to the Superior Court.

him that he was not the biological father. At the time of Child's birth, Mother was dating Casey Sponsler, who signed an acknowledgment of paternity for Child, despite Child being a different race from Mother and Mr. Sponsler. Mother and Mr. Sponsler also had an older child together, B.S. ("Brother"), who is Child's half-brother.

Prior to the instant custody case, Child was the subject of a dependency proceeding, which the dependency court dismissed after awarding sole legal and physical custody of Child to Mr. Sponsler. On March 14, 2022, when Child was three years old, Father filed a custody complaint against Mother and Mr. Sponsler. The trial court ordered a paternity test. On September 12, 2022, the court found Father to be the biological father of Child and vacated the acknowledgment of paternity signed by Mr. Sponsler, rendering Mr. Sponsler a third-party in the custody proceedings. The court ordered Mr. Sponsler to continue to have sole legal and primary physical custody of Child and awarded Father supervised physical custody of Child every other Sunday. The court scheduled a hearing for December 14, 2022. On that day, Father and Mr. Sponsler reached a custody agreement where Mr. Sponsler continued to have sole legal and primary physical custody of Child, and Father had partial physical custody of Child every other weekend. On May 24, 2023, after a review hearing, the court expanded Father's partial physical custody of Child to the first, third, and fourth weekends of each month. At an August 29, 2023 hearing, Father and Mr. Sponsler agreed to shared legal and shared physical

custody of Child on a rotating weekly basis. At a February 2, 2024 review hearing, the parties agreed to continue sharing legal and physical custody.

On July 1, 2024, Father filed a petition to modify custody, seeking an award of primary physical custody. Father proposed that Mr. Sponsler have physical custody of Child three weekends a month during the school year and every other week during the summer; Mr. Sponsler disagreed. On January 15, 2025, the court held a hearing on Father's petition. The court heard testimony from Father and Mr. Sponsler. Mother failed to appear.

Father testified that he originally thought he was Child's biological father and even went to some prenatal appointments, but after he and Mother got into an argument, she informed him that he was not Child's biological father. Father explained that Mother's sister contacted him to inform him that he was Child's biological father and that he should get involved. Father testified that ever since then, he has continuously made efforts to exercise his custody rights, comply with court orders, and spend time with Child. Father testified that Mother is not really involved with Child unless he reaches out to her. He explained that he and Child live in a two-bedroom apartment and Child has everything that she needs there. Father recently invested in a pizza restaurant with a few partners. Father testified that his relationship with Child was "rocky" at first because he was a "stranger to her" which was "understandable." N.T., 1/13/25, at 11. Father testified that their relationship has since progressed. He explained that they have a lot of fun together and go to movies, restaurants, and trampolines parks on daddy-daughter dates

on weekends. Father testified that they have a routine during the week where Child goes to kindergarten and then daycare. When Father picks her up they have dinner, go over her homework, practice her writing, play, get showered, watch a little television, and go to bed. Father testified that he attended the Child's parent-teacher conference and Child is doing well in school, that she is very independent, and has lots of friends. Father testified that Child is healthy and that he has followed up on medical and dental appointments for her. Father testified that he and Mr. Sponsler stay in contact about Child's health and medications and even help each other out if Child is sick unexpectedly and needs to stay home from school. Father explained that he has "nothing against [Mr. Sponsler] . . .I don't have anything negative against him. He did a job that most people wouldn't do." *Id.* at 19. Father further testified:

> I just feel as though I have – the best interest for her is to be with the biological parent. I'm not taking anything from him. He's done a tremendous job as being a step[-]parent. Like, I have nothing against him at all. It's, you know, I just want to raise my daughter. You know, be around the rest of my family and just have opportunity to raise my daughter as a parent is supposed to. Just be there for her to be nurturing and the love that she already has, but just to continue on giving that to her in the aspect of her growing into a young lady.

*Id.* at 27. Father confirmed that he would support Child having a relationship with Brother if he had primary physical custody.

Mr. Sponsler testified that he lives in a five-bedroom home with Child, Brother, and Mr. Sponsler's friend M.C. Mr. Sponsler explained that everyone has their own bedroom. Mr. Sponsler testified that he works at Custom Labor

Services custom butcher shop. Mr. Sponsler testified that Child and Brother have a "[v]ery, very tight bond." *Id.* at 40. Mr. Sponsler testified that Child is doing "excellent" in school, that she is very smart, that everyone loves her, and that "[s]he's too cute for her own good." *Id.* at 41. Mr. Sponsler explained that he loves doing outdoor activities with Child like fishing, hunting, and mushroom hunting. He testified that during the week Child needs to do her schoolwork before she can play. Mr. Sponsler explained that he takes Child to the doctor or dentist if it falls on his week and the same goes for Father. Mr. Sponsler stated that the doctors all have both of their information. Mr. Sponsler testified that he and Father communicate well and stated, "We are very open about everything. It's for her interest. It's not ours. We are not in this for us. We are in this for her." *Id.* at 44. Mr. Sponsler testified that he wants to keep the custody schedule the same "because it gives us – it gives her both of us to know that she had two people that tremendously love her. Like I said, [Brother] gets into a kind of a depressed state when she leaves." *Id.* at 47. Mr. Sponsler explained that because Child's mother is not involved in her life, "she really doesn't have that kind of a bond with anybody other than me and [Father]." *Id.* at 49.

At the conclusion of the hearing, the court considered the 23 Pa.C.S. § 5328 custody factors and determined that the status quo was in Child's best interest. Accordingly, the trial court denied Father's petition to modify and granted the parties shared legal and shared physical custody on a rotating weekly basis.

Father timely appealed. The trial court ordered Father to file a Pa.R.A.P. 1925(b) statement and Father complied.[1] The trial court filed a responsive Rule 1925(a) opinion.

Father raises the following issues for our review:

1. The trial court erred as a matter of law in finding [Mr. Sponsler] had met the burden of proof necessary to overcome the presumption that the biological father should have custody of [Child] over a third party.

2. The trial court abused its discretion in determining that it is in the best interest of [Child] to share custody with a non-parent when the biological father is capable of providing primary custody and care of [Child].

Father's Br. at 1 (some capitalization omitted).

This Court reviews a custody determination for an abuse of discretion, and "our scope of review is broad." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This Court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer

---

[1] We note that Father failed to file his Rule 1925(b) statement contemporaneously with his notice of appeal pursuant to Rule 1925(a)(2). *See* Pa.R.A.P. 1925(a)(2), (b). Father complied with the trial court's directive to file a Rule 1925 statement and, therefore, we find that he has preserved his issues for appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747-48 (Pa. Super. 2009) (appellant's failure to simultaneously file a Rule 1925(b) statement did not result in waiver of all issues for appeal where the appellant later filed the statement, and there was no allegation of prejudice from the late filing).

to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." ***K.T. v. L.S.***, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error demonstrates that they suffered prejudice from the error. ***J.C. v. K.C.***, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S. § 5338(a). Indeed, when reviewing child custody matters, our "paramount concern and the polestar of our analysis" is the best interests of the child. ***Saintz***, 902 A.2d at 512 (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***D.K.D. v. A.L.C.***, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." ***S.C.B. v. J.S.B.***, 218 A.3d 905, 916 (Pa. Super. 2019). Moreover, "[i]n any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be

awarded to a particular parent" and no preference based upon gender. 23 Pa.C.S. §§ 5327(a), 5328(b).

The trial court "shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors . . . which affect the safety of the child," including the enumerated factors mandated by the Custody Act. 23 Pa.C.S. § 5328(a) and (c). The court must "delineate the reasons for its decision[.]" *Id.* at § 5323(d). "In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent." 23 Pa.C.S. § 5327(b). "The presumption in favor of a parent may be rebutted by clear and convincing evidence." *Id.* This Court has defined clear and convincing evidence "as presenting evidence that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *M.J.S. v. B.B.*, 172 A.3d 651, 660 (Pa. Super. 2017) (quotation marks and citations omitted).

Father avers that the trial court abused its discretion when it denied his petition to modify and failed to grant him primary physical custody of Child. Father's Br. at 1. The crux of Father's argument is that Mr. Sponsler engaged in fraud when he signed the acknowledgment of paternity at Child's birth and the trial court failed to consider that fraudulent action in awarding custody. *Id.* at 12-16. Father argues that Mr. Sponsler should have never had an opportunity to perform parental duties for Child, that the trial court gave too

much weight to Mr. Sponsler's *in loco parentis* status and failed to consider Mr. Sponsler's deliberate fraud, and that the presumption that custody should be granted to a parent rather than a third party should never be overcome due to fraud. ***Id.***

Father raises these arguments regarding fraud for the first time on appeal and fails to provide any authority to support his position that the trial court should have placed weight on Mr. Sponsler's alleged fraud. Accordingly, these arguments are waived. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived an cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."); ***Lackner v. Glosser***, 892 A.2d 21, 29–30 (Pa. Super. 2006) (explaining that failure to cite any authority in support of a contention results in waiver).

In any event, we discern no abuse of discretion. Upon review, the trial court considered the Section 5328 custody factors and found most factors to weigh evenly between Father and Mr. Sponsler. The court placed the greatest weight on factor four, the need for stability and continuity in child's life, and factor six, child's sibling relationships. The court credited Mr. Sponsler's testimony that Child is doing well under the current custody schedule where she gets to see both Father and Mr. Sponsler equally. N.T. at 57. The court also credited Mr. Sponsler's testimony that Child and her brother, B.S., are "very close." ***Id.*** at 59. The court found that it is "a relationship that we must recognize and prioritize . . . especially in this case[.]" ***Id.*** The court also emphasized the "non-traditional history of this case" and recognized the

importance of Mr. Sponsler in Child's life, "even through Mr. Sponsler, under the eyes of the law is a third party, I must highlight that in the eyes of [Child], her whole life, that's been her father, right? So, I have to recognize that. I feel as I have to recognize that. I also just want to note that, primary custody with [Father] would require a change in schools." *Id.* at 68-69. Putting emphasis on stability, sibling relationships, and the non-traditional nature of the case, the trial court found that Mr. Sponsler met his burden to rebut the presumption that custody should be awarded to Father and concluded that it was in Child's best interest to maintain the status quo with shared physical custody.

Upon review, the record supports the trial court's findings. We decline to reweigh the evidence or usurp the trial court's credibility determinations. Accordingly, we find no abuse of discretion.

Order affirmed.

Judge Nichols joins.

President Judge Emeritus Stevens files a Concurring Memorandum.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/18/2025